**Austin Norris KING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38753.**

Court of Criminal Appeals of Texas.

Dec. 1, 1965.

C. C. Divine, Houston, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The offense is murder; the punishment, 25 years.

The indictment alleged the killing of Elgene Carter by shooting her with a gun.

The evidence shows that the deceased was the sister of appellant's wife and that they lived in the same house.

The body of the deceased was lying on a couch in the house when officers responded to a call. Gunshot wounds from a pistol taken from appellant when he presented himself at the police station were shown to have caused her death.

The appellant made no statement connecting him with the killing and no eye witness testified.

The state relied upon circumstantial evidence.

Mattie Green testified that appellant's wife ran into her house through the back door hollering: "He shot my sister."

To connect appellant with the murder of his sister-in-law and to show that his wife's res gestae statement referred to him, the state relied upon the testimony of Dan Griffin.

Griffin testified that he was raking hay when he noticed a disturbance across the street.

"Q. What was taking place over there —tell the jury what you saw?

"A. Well, I seen two colored women and one colored man there arguing. It was a

vacant house on the side next to the street that runs down to Rodney Green's, and they were living in the next house from that.

"Q. You said you saw two colored women and one colored man?

"A. Yes, sir.

"Q. Where were they when you first noticed them?

"A. They were right along about, oh, I reckon near the center of the house, the vacant house that there wasn't anyone living in.

"Q. Tell the jury, Dan, whether or not you heard some shots? * * *

"A. Yes, sir, I heard some gun shots over there.

"Q. Do you recall how many times?

"A. No, sir, I don't recall how many times it was.

"Q. Tell the jury what you saw the people you described do after the shots were fired?

"A. Well, first I seen a lady come out from around the house and come right on down across the pavement from me, and went right on into Rodney Green's back door, and shut it behind her, shut the door behind her. And then, in just a few minutes, I don't know how many little children it were, they come out from around there hollering and screaming, and going toward Rodney Green's—old man Rodney Green's.

"Q. Tell the jury what the man you saw did?

"A. Well, he stayed around there a pretty good while, and then he come on out from back there, walking, just walking along ordinary. He come on out and set in his car right near Tabor Street, and he set there for a long time, and then all of a sudden he backed out, and the last I seen him he was going back up by the Catholic Church, that was coming on, of course, further up here in town,—I reckon he were coming to give up—

"Q. Okay. I didn't ask you a minute ago, but I want to ask you now, could you tell from where you were the direction that the shots had come from?

"A. No, sir, I couldn't.

"Q. But *immediately after the shots* you would state to the jury that you saw some activity among these three people you described?

"A. Yes, sir.

"Q. Do you see that man in the Courtroom today?

"A. That man right there (indicating the defendant) *looks like he could be his size and his height. He had on a hat.*"

The evidence shows that three children of the deceased and her husband were living with her.

Patrolman Henry Johnson, the first officer to arrive at the house, testified that 4 crying children approached him as he arrived. He testified:

"Q. Would you give the approximate ages of those children, if you can, or their size?

"A. Well, I believe the little girl was around 8, and I believe one of the boys was around 7. Looked like one was about 9, and one looked to be about 4 years old."

He further testified that the children told him "that their mother had been shot."

■ The evidence is insufficient to sustain the conviction under the rule found in 24 Tex.Jur.2d 427, Evidence, Section 745:

"Where circumstantial evidence relied on by the prosecution is obviously weak, and where the record on appeal affirmatively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellate

court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction. * * *"

█ Upon another trial evidence showing that appellant had been previously charged or convicted for negligent homicide should not be admitted.

The judgment is reversed and the cause remanded.