**Ex parte Antonio MARTINEZ.**

**No. 51018.**

Court of Criminal Appeals of Texas.

Dec. 17, 1975.

Tom Mills, Jr., Dallas, for appellant.

Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

KEITH, Commissioner.

This is an appeal from an order entered in the Criminal District Court of Dallas County remanding appellant for extradition to the State of Illinois to answer a charge of murder.

The Governor's warrant and duly authenticated supporting documents authorized the extradition of "Antonio Martinez aka Robert Gomez" and the State rested after offering such instruments in evidence. Thus the State made out a prima facie case for extradition. *Ex parte Burns*, 507 S.W.2d 777, 778 (Tex.Cr.App., 1974); *Ex parte Viduari*, 525 S.W.2d 163 (Tex.Cr.App., 1975).

Thereupon, appellant took the stand in his own behalf and introduced what he swore to be his Mexican birth certificate showing his name to be Martinez Filiberto. He also testified that he was not in the State of Illinois on the date of the alleged offense (June 19, 1970) and had not been in that state since the year 1969.[1] Appellant denied ever having been known as Antonio Martinez or Robert Gomez or having ever used either of such names. He likewise denied having known the deceased.

When identity is placed in issue, as it was in this case, the burden is upon the demanding state to show that the person taken into custody and held for extradition is the identical person named in the warrant. *Ex parte Ryan*, 168 Tex.Cr.R. 351, 327 S.W.2d 596, 597 (1959).

When the hearing resumed, after a recess of several days, the state offered Chicago police officer Foster as a witness. Foster, having examined a photograph contained in the extradition file, identified petitioner as the same person shown therein to be Antonio Martinez. See and compare *Ex parte Smith*, 515 S.W.2d 925, 926 (Tex. Cr.App., 1974).

Upon cross-examination, however, it was shown that Foster had procured the photograph from "the woman which that man was living here (sic) as his common law [wife] in the City of Chicago," and "there were three other witnesses in the City of

1. This testimony of appellant, standing alone, is insufficient to require a finding that he was not in the demanding state at the time the offense was alleged to have been committed. *Ex parte Harvey*, 459 S.W.2d 853, 855 (Tex.Cr.App., 1970).

Chicago who identified the photo of Mr. Martinez as being the shooter on that day." Further, Foster testified that the common law wife "said this person is named Antonio Martinez."

It is readily apparent that Foster's testimony constituted hearsay evidence under Dean McCormick's definition:

> "The [hearsay] rule in truth is this: evidence of a statement made out of court when such evidence is offered for the purpose of proving the truth of such previous statement, is inadmissible as hearsay." 1 McCormick & Ray, Texas Law of Evidence (2d ed. 1956) § 781, p. 558.

This testimony also fits the illustration found in McCormick & Ray, supra, § 793, p. 578: "If the witness states that of his own knowledge he hears X make a certain assertion and this is offered to prove the truth of the assertion, the testimony is hearsay."

In *Salas v. State*, 403 S.W.2d 440, 441 (Tex.Cr.App., 1966), the Court quoted extensively from 1 Wharton's Criminal Evidence (12th ed.) Sec. 249, p. 571:

> " 'Hearsay evidence has been defined as evidence which does not derive its value solely from the credit to be given to the witness himself, but rests in part on the veracity and competency of some other person. In terms of the actual conduct of a trial, hearsay evidence is that which a given witness offers in court (a) which is not based on his own knowledge, but is merely a repetition of what he has been told or the offering by him of a writing prepared by another, and (b) which is offered as proof of the truth of the matter contained or stated therein.' "

Appellant contends that he discharged his burden of showing that he was not the person named in the warrant, since the only rebuttal testimony offered by the State was hearsay and constituted no evidence.

2. This language is a paraphrase of words found in *Belverman v. State*, 16 Tex. 130, 132 (1856): "But mere hearsay is not only

We recognize the rule that hearsay evidence has no probative value; or, as stated in *Ex parte Thrash*, 167 Tex.Cr.R. 409, 320 S.W.2d 357, 359 (1959): "Mere hearsay is not only not the best, it is not even secondary, evidence; it is no evidence.[2] It is not admissible although no better evidence is to be obtained." See also, *Salas v. State*, supra (403 S.W.2d at 441); *Urban v. State*, 387 S.W.2d 396, 398 (Tex.Cr.App., 1965).

Affidavits are likewise hearsay evidence when used to prove the truth of the assertions therein made, not for the want of an oath but because of the lack of opportunity for cross-examination of the declarant. 1 McCormick & Ray, supra, § 787 at p. 570.

This brings us to the point where we must face the apparently conflicting holdings of this Court with reference to identification of the accused in extradition proceedings.

In one case, *In re O'Connor*, 169 Tex.Cr.R. 579, 336 S.W.2d 152, 153 (1960), after the issue of identity had been raised, State's counsel sent a picture of the accused to the demanding state. A detective in the demanding state made an affidavit that the photograph was that of the man named in the extradition warrant. This was held to be sufficient to authorize the trial judge's rejection of testimony of the accused and his extradition was affirmed. One judge dissented. *O'Connor* has been followed in other cases, e. g., *Ex parte Viduari*, supra (525 S.W.2d at 164), and cases therein cited.

On the other hand, in *Ex parte Williams*, 169 Tex.Cr.R. 192, 333 S.W.2d 146, 148 (1960), relied upon by appellant herein, testimony similar to that given by Foster was held to be insufficient, the Court saying: "This testimony appears to be hearsay and not the best, nor even secondary evidence; it is no evidence."

without probative value." [3] See also, *Letwick v. State*, 145 Tex.Cr.R. 416, 168 S.W.2d 866, 868 (1943), where the agent of the demanding state sought to identify the appellant by photographs; but, since he was relying upon what the victim had told him, his testimony was held to be hearsay and to constitute no evidence as to identity.

Thus, under prevailing authority, if the identity is established by an ex parte affidavit of an officer of the demanding state, based upon hearsay evidence, the fugitive may be extradited. On the other hand, when the officer from the demanding state testifies in person at the hearing, and his testimony is based upon hearsay, the fugitive may not be extradited.

In order to eliminate the apparently conflicting rule relating to identity established by affidavit and identity established by testimony given in open court, as exemplified by the two lines of cases just discussed, we have reconsidered the subject. In so doing, we quote copiously from a decision by the Supreme Court of Indiana, *Notter v. Beasley*, 240 Ind. 631, 166 N.E.2d 643, 93 A.L.R.2d 905 (1960), wherein the modern authorities were collated. There, in declining to apply the strict common law rules of evidence to extradition, the Court held:

"The appellant in this case was entitled to and did raise the issue of identity. The question then arises: what is competent evidence on the part of the sheriff or other law enforcement officers holding the petitioner on the issue of identity with that of the fugitive from another state?

"Wigmore classifies extradition proceedings with that of other special or statutory proceedings of a summary nature which are not criminal in nature, in which the strict rules of evidence known to the common law are not applicable. He places within this category interlocutory, grand jury, disbarment, administrative and extradition proceedings, to mention but a few, and says:

" '(6) *Extradition*. For the same reasons of principle, extradition proceedings are not governed in strictness by the jury trial rules of Evidence. Moreover here the additional reason obtains that the evidence is brought from outside the jurisdiction, and the procurement of evidence is too likely to be hampered by the lack of power or practicability, as well as by the possible differences of law in another system.' 1 Wigmore on Evidence, 3rd Ed. § 4(6), p. 24.

"In 39 C.J.S. Habeas Corpus § 39a, p. 548, it is said:

" 'In construing the evidence in habeas corpus proceedings, the court is not to be governed by the technical rules as in the case of a trial for a crime, but is to regard it liberally in favor of the demanding state.'

"In line with such authority it was held in *Letwick v. State*, 1947, 211 Ark. 1, 198 S.W.2d 830, that it was proper in a habeas corpus proceeding involving extradition to introduce in the evidence for the purpose of identification, photographs which the officer from the requesting State stated had been identified 'as the photographs of the person accused in Colorado' of the crime charged, although 'he did not testify that he personally knew Levine (the petitioner).' We concede this is hearsay testimony, as did the Supreme Court in the instant case, but the appellant is not on trial for the commission of the offense in this State. In fact, the issue of his guilt or innocence is not in question here and the constitutional provision that he is entitled to be confronted with the witnesses against him for cross-examination is not applicable. If and when appellant is tried for the crime charged in the State of Oklahoma, he will be entitled to be confronted by the witnesses there who seek to identify him. It

---

3. A careful study of the *Williams Case* discloses that the reversal was based upon the fact that the State had not overcome the proof from Williams that he could not, in fact, have been in Ohio when the crime was committed. Cf. *Ex parte Martin*, 374 S.W.2d 436, 438 (Tex.Cr.App., 1963).

is there that his identity must be proved beyond a reasonable doubt—not here. We are sustained in the position we take here by an almost unanimous weight of authority.

"The United States Supreme Court has said: 'Strict common law evidence is not necessary' in proceedings of the character here. *Munsey v. Clough*, 1905, 196 U.S. 364, 25 S.Ct. 282, 49 L.Ed. 515, 517.

"In the *Lindbergh* kidnapping case, *People ex rel. Hauptmann v. Hanley*, 1934, 153 Misc. 61, 274 N.Y.S. 813, at page 822, it is said:

" 'We are not to be governed by technical rules as in the case of a trial for a crime.'

"See also: 25 Am.Jur., Habeas Corpus, § 72, p. 198." (166 N.E.2d at 647, 93 A.L.R.2d at 910–911)

See also, Annotation, 93 A.L.R.2d 912, "Extradition—Accused—Identification" (1964); *United States ex rel. Vitiello v. Flood*, 374 F.2d 554 (2 Cir., 1967); "Interstate Extradition to Answer Criminal Charges", R. Moses and C. Dally, 9 South Texas L.J. 166 (1967).

We hold, in conformity with the authorities cited in *Notter v. Beasley*, supra, that appellant did not establish, either by admissions or conclusive evidence, that he was not the person named in the Governor's warrant and did not, therefore, overcome the prima facie finding therein. The holdings of *O'Connor* and *Viduari*, both supra, are reaffirmed, and the ruling therein is extended to the in-court testimony of an officer from the demanding state on the question of identification. To the extent the holdings in *Ex parte Williams*, 169 Tex. Cr.R. 192, 333 S.W.2d 146, 148 (1960), and *Letwick v. State*, 145 Tex.Cr.R. 416, 168 S.W.2d 866, 868 (1943), are in conflict with the holding herein, each is overruled.

The judgment of the trial court is affirmed.

Opinion approved by the Court.