John Lloyd CHAMBERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 1147–83.

Court of Criminal Appeals of Texas,
En Banc.

June 4, 1986.

Robert T. Baskett (court-appointed), Dallas, for appellant.

Henry Wade, Dist. Atty. and Tom Streeter, Molly Meredith, Steve Stevenson and George West, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, First Asst., State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING ON PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted by a jury of credit card abuse. V.T.C.A. Penal Code, § 32.31. Punishment was assessed at eight (8) years confinement in the Texas Department of Corrections and a $4,000 fine. On direct appeal, the Fort Worth Court of Appeals reversed the conviction and ordered a judgment of acquittal. *Chambers v. State*, delivered October 27, 1983, No. 2–83–198–CR. Both the District Attorney's and State Prosecuting Attorney's Petitions for Discretionary Review were refused by this Court on April 4, 1984. On December 3, 1984, we granted leave to file a motion for rehearing by the State Prosecuting Attorney to consider the correctness of the holding by the court of appeals. The motion for rehearing will be granted.

The indictment alleges in pertinent part that appellant, acting "with [the] intent to fraudulently obtain property and services, namely, the rent of a room, from Louise Dyringe Posey, knowingly and intentionally use and present an American Express credit card Number 3782 916388 22022 with knowledge that the card had not been issued to the said defendant, and that the said card was not used with the effective consent of the cardholder, Jerome Thomas Fiske."

## I. Facts [1]

The facts, viewed in the light most favorable to the prosecution are as follows.

Jerome Fiske, the cardholder, testified that on December 15, 1981, he checked into the Eight Days' Inn in Irving. At about 1:00 a.m., shortly after he checked in, he went to Denny's for coffee. After having coffee, he went to his room and went to sleep. At approximately 7:30 a.m. on the morning of the fifteenth, Fiske went through his belongings and found that his car keys, his American Express card, a Texaco gas credit card, and his Tennessee driver's license were gone. His 1979 black Mark V Lincoln Continental was also missing from the parking lot. Fiske immediately notified the police. Fiske was asked by the prosecutor whether he gave consent to anyone to enter his room or to use his credit card on December 15, 1981. He told the jury "nobody uses my credit cards, not even my own wife. Nobody uses my credit cards, no, at all." He further testified that he did not know appellant or his blonde companion.

Louise Dyringe Posey testified that on December 15, 1981, she was the manager at the Lexington Apartments and Motor Inn [hereafter called Lexington] in Irving. She lived on the premises and rented both rooms and apartments. When she arrived at her office at 6:20 a.m. December fifteenth, the desk clerk told her that a couple had just checked into Room 111. The clerk showed Posey the registration card and the American Express imprint from that transaction. The name shown on the registration card and the imprint was that of the complainant, Jerome Fiske.

The State then introduced the imprint of the American Express card and the registration card into evidence. The number on the imprint matches the card number alleged in the indictment. The number of the card is 3782 916388 2*2* 022. The prosecutor then incorrectly read off the number as 3782 916388 2*3* 022. Posey mistakenly agreed that that was the number, although the exhibit displayed the proper number.

The same exchange concerning the card number occurred between the prosecutor and Fiske during Fiske's testimony, but Fiske never identified any card imprint.

Posey stated that appellant and his companion returned to the office within minutes of her conversation with the desk clerk. She described appellant as a black male, medium height, and medium build. He was wearing a hat and had long hair and a mustache. Appellant's companion was a tall, thin, blonde female wearing a big long cape. Posey identified appellant in open court.

While they were standing in the office, Posey asked the couple what room they were in. The female responded: "Room 111." They were in the office waiting for a taxi. She told the jury that she knew appellant as Jerome Fiske, the name appearing on the registration card and the credit card imprint.

Posey testified that later that day, she received a call from AGM car rental in Richardson. AGM asked if a Jerome Fiske was registered at the motel and whether he had presented an American Express card when he registered. Posey responded that she had the card imprint; AGM informed Posey that the card was stolen.

Posey immediately notified the Irving Police. When they arrived, she showed them the American Express imprint and registration card. Posey stated that the police set up surveillance on Room 111 by positioning themselves in Room 109. At noon the following day, December 16, 1981, appellant's female companion called Posey to inform her they were checking out. Posey recognized the woman's voice, and believed her to be Mrs. Fiske. She again notified the police, who by this time had broken their surveillance on Room 111, and told her employees to stay away from the vicinity of Room 111.

Beverly Sue Buchwald told the jury that she worked for AGM car rental in Richardson. On December 15, 1981, two people

1. We borrow liberally from the State's brief and the court of appeals opinion.

came into her office to rent a Cadillac, using the name of Mr. and Mrs. Jerome Fiske. One was a black male, whom Buchwald identified as appellant, and the other was a tall, thin, blonde, white female. Appellant presented an American Express credit card and a Tennessee driver's license in the name of Jerome Fiske to her.[2] She imprinted the credit card, telephoned the American Express Company for approval on the rental, and was informed that the card had some difficulty. She let appellant, who had identified himself as Jerome Fiske, talk to the American Express representative on the phone, and she heard him giving them various addresses by which they could verify his residence. The rental was not approved. Appellant and his companion left the office. The appellant said he was going to his automobile to get his Visa card. They did not return to the office. Appellant took Fiske's Tennessee driver's license with him but left the American Express card with Buchwald. After they left, the real Jerome Fiske called Buchwald and one of Buchwald's employees subsequently called Louise Posey at the Lexington.

Buchwald testified that she kept the American Express card, imprinted it, cut the card in half, and mailed it back to American Express. She told the jury that she did not remember the complete card number, but she identified a copy of the imprint as the one she later gave to the police. The card number on the identified copy matches the card number alleged in the indictment and placed in the jury charge.

Officer T.L. Garth of the Irving Police Department testified that at 2:14 p.m. on December 15, 1981, he was dispatched to the Lexington to "attempt to locate a stolen car." The car was a black, 1979 Lincoln Continental owned by Jerome Fiske. Officer Garth located the car in the parking lot of the Lexington.

Officer R.E. Dix testified that on December 15, 1981, while on duty as an undercover police officer for the City of Irving, he was called to go to the City of Richardson and talk to Beverly Buchwald at AGM Rentals. He received from her a copy of the imprint of the American Express card the appellant attempted to use to rent a Cadillac. The imprint copy, authenticated by Dix and Buchwald, was admitted into evidence as State's Exhibit No. 4. The copy as given by Buchwald to Dix and shown to the jury reflected the same card number as provided in the indictment and jury charge. Both State's Exhibit No. 1, the credit card imprint from the Lexington Apartments on Room 111 and State's Exhibit No. 4, the imprint from the credit card used in the attempt to rent the Cadillac, appear to be made from the same card; they contain the same account number with American Express in the name of Jerome Fiske.

Officer Dix further testified that he set up surveillance of Room 111 at the Lexington at about 5:00 p.m. on December 15, 1981. The black Lincoln Continental was outside the Lexington in the parking lot. After it became apparent that the occupants were not going to return, Dix obtained and executed a search warrant for the room. Inside the room he found "papers that went to the Lincoln Continental, keys to it, miscellaneous papers belonging to Jerome Fiske from the Continental, tickets, checks, things of this nature." The tickets were airline tickets in the name of Jerome Fiske.

Officer Dix also found a check made out to Jerome Fiske drawn on a Harold Vogt. Fiske testified that he did not know anyone by that name. The State offered expert testimony that the check found in Room 111 bore appellant's fingerprints. Dix further testified that his search produced an "intrusion device" and some clothes. Fi-

<hr>

**2.** It appears from the record that Tennessee driver's licenses did not have pictures on them at the times involved in this case.

nally, Dix testified that keys to Room 334 in the Eight Days' Inn, across the street from the Lexington, were found.

Officer D.M. Collins, Irving Police Department, Organized Crime Unit, stated that he was working undercover on December 14 and 15, 1981. He placed a phone call during this period of time to Room 334 of the Eight Days' Inn in Irving and the phone was answered by a male. He later was able to identify the voice on the telephone as appellant's. On the afternoon of the fifteenth, Collins took part in the surveillance operation at the Lexington. Collins was told the surveillance was on two suspects in a stolen car case. Officer Collins stayed on surveillance throughout the night of the fifteenth and was relieved at 5:00 a.m., December 16. During that time period neither the appellant nor his companion returned to the motel.

At about 10:00 a.m., December 16, Collins went back on duty and testified that he received a call from the manager of the Lexington informing him that appellant's blonde companion had called the Lexington. She told the manager that she and appellant were coming back to the Lexington to check out. As Collins watched on the afternoon of December 16, a taxi cab approached containing a white female with long blonde hair and a black male. He believed these two people were the people who were occupying Room 111. As the taxi approached his location, it suddenly sped up and drove away. Collins was in an unmarked police car, but it had red lights and a siren in its grill. He pursued the taxi, stopped it, identified himself as a police officer, and ordered the occupants of the taxi from the vehicle. The black man identified himself by a name other than Chambers. Collins identified appellant at trial as the man he arrested on December sixteenth.

## II. The Standard for Measuring the Sufficiency of the Evidence in "Weak Circumstantial Evidence Cases."

In analyzing the sufficiency of the evidence, the court of appeals first disregarded Posey's hearsay testimony about her conversation with the clerk who had been on duty when the couple checked into Room 111, citing *Alvarado v. State*, 632 S.W.2d 608 (Tex.Cr.App.1982), and *Gutierrez v. State*, 628 S.W.2d 57 (Tex.Cr.App. 1980).[3] The court then concluded that after Posey's hearsay testimony was disregarded, the remaining testimony in the case only circumstantially involved appellant in the charged offense. After noting that the State did not call the only witness (the desk clerk) who could have supplied direct evidence that appellant unlawfully used the credit card, the court of appeals applied the following rule from *Cruz v. State*, 482 S.W.2d 264 (Tex.Cr.App.1972):

"Where circumstantial evidence relied on by the prosecution is obviously weak, and where the record on appeal affirmatively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellate court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction."

When the court of appeals viewed the evidence after disregarding the hearsay, it concluded that it was obviously weak. Since the State failed to adequately explain its failure to call the desk clerk, the court of appeals ordered an acquittal under *Cruz*, supra.

The *Cruz* standard relied upon the court of appeals is both inconsistent with our holdings in the *Carlsen* line of cases,[4] and inherently illogical. In *Carlsen*, supra, we held that the standard for review of sufficiency of the evidence is the same in both

---

3. As to the propriety of disregarding hearsay when the sufficiency of the evidence is challenged, see part III, infra.

4. *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr.App. 1983); *Freeman v. State*, 654 S.W.2d 450 (Tex. Cr.App.1983); *Denby v. State*, 654 S.W.2d 457 (Tex.Cr.App.1983); and *Houston v. State*, 663 S.W.2d 455 (Tex.Cr.App.1984).

direct and circumstantial evidence cases.[5] We also held that we would not abandon "the utilitarian 'exclusion of outstanding reasonable hypotheses' analysis for *applying* the above 'standard for review' in circumstantial evidence cases." *Id* at 449 (Opinion On State's Motions For Rehearing) (emphasis in original). The reason for not abandoning the "exclusion of outstanding reasonable hypotheses" analysis is that it is the same mental process that a rational trier of fact would employ in logically analyzing any circumstantial evidence case, weak or strong.

As was stated in the concurrence in *Carlsen:*

"Logic dictates that if there is a 'reasonable hypotheses' other than the guilt of the accused, then it cannot be said that the guilt [of the accused] has been shown 'beyond a reasonable doubt.' In *Hankins v. State*, 646 S.W.2d 191 (Tex. Cr.App.1983), we recognized that direct and circumstantial evidence were to be treated with equal dignity. *Thus any effort to weave into the standard of appellate review any exception or difference or special treatment for one type of evidence will fail for lack of logic."*

*Id.* at 450 (McCormick, J., concurring) (Opinion On State's Motions For Rehearing).

▇▇▇ We believe that the "weak circumstantial evidence case" standard of review employed by the court of appeals in this case is such an effort. It fails for lack of logic because, unlike the "exclusion of outstanding reasonable hypotheses" analysis, it is not a utilitarian mode of analysis for applying the "rational trier of fact" standard in circumstantial evidence cases. The supposed logic of the "weak circumstantial evidence case" standard of review, which is discussed in 24 Tex.Jur.2d, Evidence, Sec. 745, p. 927, stems from the untenable presumption that the State's fail-

ure to produce and failure to account for the non-production of "available testimony" creates reasonable doubt as a matter of law. See *Ysasaga v. State*, 444 S.W.2d 305, 309 (Tex.Cr.App.1969); *Hollingsworth v. State*, 419 S.W.2d 854 (Tex.Cr.App.1967); *King v. State*, 396 S.W.2d 409 (Tex.Cr.App. 1965); *Ramirez v. State*, 163 Tex.Cr.R. 109, 289 S.W.2d 251 (1956). This presumption is rational only if it is assumed that the production of the "available testimony" would have created reasonable doubt in the case. Such an assumption is unreasoned. If it were a legitimate assumption, one can only wonder why the accused would not produce this testimony and demand an instructed verdict in the case. [The entire idea of focusing on what evidence was not introduced by the State is absurd. Instead, the proper focus in reviewing sufficiency of the evidence is on what was introduced into evidence.] Either the evidence permits a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt or it does not. What is not in evidence is irrelevant to a determination of the sufficiency of the evidence. Because *Ysasaga*, supra, and *Cruz*, supra, are repugnant to the *Carlsen* line of cases and are inherently illogical, they and their progeny, to the extent they are in conflict with this opinion, are expressly overruled. The proper standard for review in this case is: whether after viewing *all* the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, supra.

### III. The Probative Value of Hearsay

▇▇▇ Our long standing practice of disregarding inadmissible hearsay in determining evidentiary sufficiency is the lone exception to our general rule that we examine *all* the evidence before the trier of fact in determining sufficiency questions. See, e.g., *Gutierrez*, supra; *Alvarado*, supra.

---

**5.** The standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rationale trier of fact could have found the essential elements of the crime be-

yond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 97 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 563 (1979).

This practice stems from the heretofore erroneous premise that inadmissible hearsay completely lacks probative value. Since, as will presently be demonstrated, inadmissible hearsay does possess probative value, it should be considered in determining the sufficiency of the evidence.

The reasons for the exclusion of hearsay have been explained by Professor Black:

"The so-called hearsay dangers, which justify the exclusionary rule, are universally recognized to be the witness' perception, memory, narration and sincerity. All of these revolve around the denial of the right of cross-examination, and the lack of opportunity to view the witness' demeanor. No one has ever suggested lack of probative value as a hearsay danger.

"Perhaps the best argument in favor of the probative value of hearsay lies in the many exceptions to its exclusion. If hearsay were nonprobative there would not be so many courts and lawyers and commentators seeking excuses to admit it. There are no exceptions to the rule excluding irrelevant evidence which truly lacks probative value."

Black, *Hearsay Admitted Without Objection—A Defense of Its Probative Value*, 17 So.Tex.L.J. 69, 71–72 (1975) (footnotes omitted).

Many out-of-state cases confirm the probative value of admitted hearsay. In *Barlow v. Verrill*, 88 N.H. 25, 183 A. 857, 858–59 (1936), the Supreme Court of New Hampshire stated:

"The hearsay rule is merely an exclusionary principle limiting admissibility and in no sense a canon of relevancy. It involves no assertion that hearsay statements are without probative force or that they furnish no logical basis for conclusions of fact. On the contrary, if relevancy were not assumed, no special rule of exclusion would be required. Unless it were logically relevant, hearsay would be excluded by virtue of the fundamental axiom of evidence that 'none but facts having rational probative value are admissible.' 1 Wig.Ev. § 9. 'In judging ... as to the real scope and value of any rule of exclusion like that rejecting hearsay it is necessary to bear in mind that such exclusion can apply, properly speaking, only to that which is already evidence. The hearsay rule cannot be invoked to exclude statements which are merely irrelevant.' 4 Chamberlayne, Ev. § 2722. 'The hearsay rule is merely an additional safeguard to be applied to testimonial evidence otherwise admissible.' 2 Wig.Ev. § 1424. Consequently it is established law, supported by an immense number of decisions, that hearsay testimony when admitted without objection is to be considered and given its logical probative effect."

In *State v. White*, 215 S.C. 450, 55 S.E.2d 785, 787 (1949), the South Carolina Supreme Court wrote:

"The rule is well settled that evidence even though incompetent, if admitted without objection or motion to strike, is to be given the same probative value as that to which it would be entitled if it were competent.... It is held by a great majority of the courts that verdicts may result from hearsay testimony and be sustained, where that evidence is permitted without objection to go to the jury. The hearsay rule is merely an exclusionary principle limiting its admissibility and in no sense a canon of relevancy—its probative force, where admitted without objection, being for the jury and not for the court to determine. See the many cases cited in Annotation, 104 A.L.R., Page 1130. As was said in *Danson v. Carroll*, 163 Mass. 404, 40 N.E. 185, 186: 'Hearsay evidence usually is rejected because it lacks the corroboration of an oath or affirmation, and not because it has no natural tendency to induce belief....' As hereinabove pointed out, the evidence in question was admitted without objection and may properly be considered as if it were in law admissible—the only question being with regard to its probative weight; and this was a matter for the jury."

Finally, in *Kern v. State,* 237 Ind. 144, 144 N.E.2d 705 (1957), a prosecution for robbery, the Indiana Supreme Court, holding that inadmissible hearsay evidence admitted without objection could be considered, stated: "A party who permits incompetent evidence on a material issue to be introduced without objection can not be heard to say on appeal that it should not be considered in determining if the finding is supported by the evidence."

In fact, Texas (in criminal cases only) and Georgia are the only American jurisdictions that completely deny any probative value to hearsay in determining sufficiency of the evidence claims. See Annot., 79 A.L. R.2d 890. The Texas rule has been the subject of criticism by commentators other than Professor Black. See 1 Wigmore, *Evidence,* § 18, n. 1 (Tillers rev. ed. 1983) (characterizing rule as "patent nonsense"); 1 Ray, *Texas Evidence,* § 31 (3rd ed. 1980); Comment, *Hearsay Admitted Without Objection: A Reassessment of Its Probative Value,* 33 Baylor L.Rev. 983 (1981).

■ In other contexts, this Court has previously held that inadmissible hearsay has probative value in extradition proceedings, *Ex parte Martinez,* 530 S.W.2d 578 (Tex.Cr.App.1975); in probation revocation proceedings, *Frazier v. State,* 600 S.W.2d 271 (Tex.Cr.App.1980); and in suppression hearings, *Lalande v. State,* 676 S.W.2d 115 (Tex.Cr.App.1984). Obviously then, inadmissible hearsay is not always "no evidence." Any suggestion that the burden of persuasion in a given proceeding controls the probative value of a piece of evidence is ridiculous. Evidence either has probative value or it does not. The burden of persuasion is concerned with the cumulative force of *all* the evidence and simply does not affect the probative force of a particular piece of evidence, the latter determination being the responsibility of the factfinder. Cf. Art. 36.13, V.A.C.C.P.

In *Ballew v. State,* 640 S.W.2d 237, 244 (Tex.Cr.App.1982) (Opinion on Appellant's Motion for Rehearing), we stated:

"The fact that other jurisdictions and textbook writers have criticized a rule that we have embraced, does not, standing alone, furnish reason for abandonment of such rule. However, if precedent does not have some sort of reasonable underpinning, we should not bury our heads in the sand when such criticism is voiced."

■ The time has come for this Court to acknowledge the lack of any rational underpinning for the special treatment of hearsay in sufficiency of the evidence cases. Therefore, for the reasons stated above and the additional reasons contained in Judge Douglas' dissenting opinion in *Hanna v. State,* 546 S.W.2d 318 (Tex.Cr. App.1977), we will follow the majority rule now embraced by Tex.R.Ev. 802 and treat inadmissible hearsay admitted without objection the same as all other evidence in the sufficiency context, i.e., it is capable of sustaining a verdict. Accordingly, to the extent they are in conflict, *Alvarado,* supra, and *Gutierrez,* supra, are overruled.

## IV. Sufficiency of the Evidence

When all the evidence is viewed in the light most favorable to the jury's verdict, the following picture emerges.

Jerome Fiske, a guest at the Eight Days' Inn, woke up on the morning of December 15, 1981, to discover certain personal property missing from his room, including his American Express card, a gas credit card, his car keys, his 1979 black Lincoln Continental Mark V, and his Tennessee driver's license.

That very same morning, at approximately 6:00 a.m. a couple checked into Room 111 at the Lexington Apartments and Motor Inn by presenting an American Express card in the name of Jerome Fiske. Shortly thereafter, appellant and his blonde companion appeared together in the manager's office and the blonde companion stated that she and appellant were staying in Room 111. A subsequent search of Room 111 revealed that property belonging to Jerome Fiske was in Room 111; Fiske's Mark V Lincoln was in the parking lot. A check

made out to Fiske, with appellant's fingerprints on it, was also found in Room 111.

At some time on December 15, 1981, appellant and his blonde companion attempted to rent a Cadillac from AGM car rental by presenting the same American Express card that had been presented at the Lexington, a card bearing the name of Jerome Fiske. Appellant also presented a Tennessee driver's license in the name of Jerome Fiske. When difficulty arose during the transaction, appellant and his blonde companion fled.

Finally, when appellant and his blonde companion returned the next day to check out of the Lexington, they observed the waiting police reception and attempted to flee.

▉ From these facts, reasonable minds can draw only one inference—that appellant and his blonde companion were in fact the couple who checked into Room 111. Therefore one of them must have presented the American Express card alleged in the indictment. The extraneous offense, in conjunction with the other evidence, is sufficient to prove the intent to defraud, as well as being sufficient to prove that appellant and his blonde companion were acting as parties. See V.T.C.A. Penal Code, § 7.02. Fiske testified that nobody had his consent to use his credit cards. Obviously, the card in question was not issued to appellant. Therefore the evidence was sufficient to prove that appellant, acting alone or as a party[6], presented the card in question, as alleged in the indictment.

Accordingly, the State's motion for rehearing is granted. The judgment of the court of appeals is reversed and remanded for consideration of appellant's remaining ground of error.[7]

6. The court's charge to the jury in this case authorized appellant's conviction under the law of parties.

7. That ground of error alleges "a fatal variance between the credit card alleged in the indictment and that proved to belong to the named cardholder, 'based on the misidentification of the cardnumber by Posey and Fiske.'" No opin-

ONION, Presiding Judge, dissenting.

The Court of Appeals found the hearsay testified to by Louise Posey concerning her conversation with the desk clerk was without probative value in determining the sufficiency of the evidence. See *Gutierrez v. State,* 628 S.W.2d 57 (Tex.Cr.App.1980); *Alvarado v. State,* 632 S.W.2d 608 (Tex.Cr. App.1982). Disregarding the hearsay, the Court of Appeals concluded the case was an obviously weak circumstantial evidence case, and noted the State had failed to call the desk clerk who could have supplied direct evidence that the appellant had unlawfully used the credit card. The court then cited the rule discussed in *Cruz v. State,* 482 S.W.2d 264 (Tex.Cr.App.1972), and reversed upon the basis of insufficient evidence to support the jury verdict.

The majority now reverses the Court of Appeals and affirms the conviction. In doing so the majority finds it necessary to slip into the graveyard and exhume the rule discussed in *Cruz,*[1] and then, with a flourish, rebury the rule with a funeral oratory that the black-hatted villain (meaning rule), so "inherently illogical," is now dead and is being "deep sixed" by an intelligent and enlightened majority far superior to those who applied the rule for over 30 years. All that is missing is the request "Please applaud."

Not being satisfied with that action, the majority, in an anticipatory mood, rushes forward to beat any adoption of the proposed criminal rules of evidence, see Tex.Bar Journal, Vol. 48, number 8, Sept. 1985; H.B. 13 (Acts 1985, 69th Leg., ch. 685, p. 5136), and declares that unobjected to hearsay testimony does have probative

ion is expressed as to the proper disposition of that ground of error.

1. The rule discussed in *Cruz* was interred by footnotes in *Denby v. State,* 654 S.W.2d 457 (Tex.Cr.App.1983) (Opinion on State's Motion for Rehearing), at p. 464, and in *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr.App.1983) (Opinion on State's Motion for Rehearing), at p. 472.

value. So much for attempts to gain early credit.[2]

Strangely enough, having established a new rule, the majority fails to demonstrate how the rule was necessary to the conclusion reached. The evidence is summarized without any reference to the so-called hearsay.

It is well to examine the hearsay testimony that apparently has caused so much controversy in determining the sufficiency of the evidence. Louise Posey testified that on December 15, 1981, she was the full-time manager, on a 24 hour basis, of the Lexington Apartments and Motor Inn in Dallas County. She lived on the premises. The record then reflects the following on direct examination:

"Q. Without ... what happened at 6:20 a.m. on the morning of December 15th, 1981?

"A. I came into the office and the desk clerk on duty at the time told me that he had just checked in a couple and there are not many people who check in at that hour, and he showed me the registration card and also, the American Express ... imprint made from the American Express card, and told me that he had checked a couple into Room 111.

"Q. And he had those documents ... he still had those out and he showed those to you at that time?

"A. Yes, he did. They had just finished checking in.

"Q. What was the name shown on the registration of the ... that appeared to be the name of the person registered?

"A. Jerome Fiske, F-i-s-k-e.

"Q. And what name was on the imprint of the American Express credit card?

"A. The same name."

Thereafter the State offered the registration card and imprint of the credit card into evidence as State's exhibits # 1 and 2. After determining on voir dire that the handwriting on the exhibits reflecting the number "# 111" was in the handwriting of the clerk known to the witness Posey, the appellant offered "No objections" to the offer of the exhibits which were admitted into evidence.

Thereafter on further direct examination of Posey the State established the procedure in which registration cards are filled out and how the room number (in this case # 111) is written on the card, etc. Thereafter the record reflects:

"Q. Now, did you have a conversation with the clerk about the appearance of the two people that he had rented this room to?

"A. Very definitely.

"Q. And what did you tell the clerk at the end of that conversation.

"A. That I would keep my eye out on the room."

After examining the registration card showing that a Jerome Fiske had checked into Room 111 at 6:15 a.m., five minutes before she arrived in the office, and also showing a license plate number of a car and "Drivers license No. 57262249 Tennessee" as well as the imprint of the American Express card, etc., Posey, shortly thereafter, saw a black male, whom she identified as appellant, and a tall white woman come into the office. They talked about waiting for a taxi and the woman said they were in Room 111.

Posey related appellant and the woman left by taxi, that later she had a call from a car rental company concerning the American Express card and called the police; and still later the woman telephoned and said they were returning to check out of Room 111. On cross-examination it was established that Posey was not present at the time the registration card was filled out.

What was the hearsay involved in Posey's testimony which should have been

2. Under said H.B. 13 the rules of criminal evidence should be promulgated by January 1, 1986. Those rules when promulgated will have an effective date so that they will be applicable only to trials commencing after that date.

excluded upon a proper objection, if one had been made. Posey testified that upon entering the office at 6:20 a.m. the desk clerk told her "he had just checked in a couple ... checked a couple in Room 111." Later, when asked if she had a conversation with the desk clerk about the appearance of the couple, she simply responded "Very definitely" but did not reveal the contents of that conversation. Posey then stated she told the clerk she would keep "my eyes out on the room." This is all the hearsay involved in Posey's testimony, and not all of this was hearsay.

It was perfectly permissible for Posey to testify that she went to the office and as a result of a conversation with the clerk examined the registration card, the imprint of the credit card, etc., which showed registration at 6:15 a.m. It was also permissible for her to relate that her conversation concerned the appearance of the couple. She stated only she had such a conversation, not what the conversation was. She did not even later testify the appearance of appellant and the woman matched the description given her.

The Court of Appeals in its opinion stated "Posey had been told by the clerk on duty before her that a black man and white woman had very recently checked into Room 111." This is not supported by Posey's testimony, although it might have been inferred.

The supposed "hearsay" has been blown all out of proportion. It is not the pivotal turning point in this case. The hearsay is immaterial as matters mentioned therein are supported by other evidence. The evidence is or is not sufficient without regard to the hearsay.

The indictment drafted under V.T.C.A., Penal Code, § 32.31, alleged in pertinent part that appellant "with intent to fraudulently obtain property and services, namely, the rent of a room, from Louise Dyringe Posey, knowingly and intentionally use and present an American Express credit card Number 3782 916 388 2202 with knowledge that the card had not been issued to the said defendant, and that the said card was not used with the effective consent of the cardholder, Jerome Thomas Fiske."

The elements of the offense as charged in the indictment were (1) a person (2) with intent to fraudulently obtain (3) property or service (4) presents or uses (5) credit card (6) with knowledge that it is not used with effective consent of cardholder. See and cf. Branch's Texas Anno.Penal Statutes, 3rd Ed., Vol. Two, p. 562.

The evidence reflects the credit card in question and other items were taken from Fiske by a party or parties unknown after 1 a.m. on December 15th at the Eight Days' Inn. At 6:15 a.m., according to State's exhibits, someone used the credit card to rent Room # 111 at the Lexington Motor Hotel just across the way from the Eight Days' Inn. There were two in the party according to the exhibits. Shortly after 6:20 a.m. appellant and a woman appeared at the office of the Lexington and stated they were in Room 111. Later on December 15th appellant in company with a white woman attempted to rent a car, presenting a Tennessee driver's license in the name of Fiske, and presenting a credit card in question. After some difficulty in securing the approval of American Express, appellant left the car rental office, leaving the credit card, but taking the driver's license with him. When he returned to the Lexington, he attempted to flee when he saw the police. A check found in Room 111 made out to Fiske and signed by a Harold Vogt bore appellant's fingerprints. Other items taken from Fiske were also found in the room.

The evidence does not show who took the credit card and other items from Fiske. He did not know. The evidence reflects the credit card was used to secure Room 111 at the Lexington. There is no direct evidence who used or presented that card to the desk clerk or signed the registration card. No handwriting exemplars were utilized. Two people checked into the room, and later appellant's female companion told Posey, manager of the Lexington, they were in Room 111. Later in the day, the exact time not being revealed, appellant was in

possession of the credit card while attempting to rent a car. He attempted to flee when he saw the police upon returning to the Lexington. Appellant's fingerprints were on a check found in Room 111. There was no evidence as to the time the prints had been placed on the check.

Was there sufficient evidence to show that appellant used and presented the credit card as charged in the indictment? This Court, of course, must view the evidence in the light most favorable to the jury verdict. *Houston v. State,* 663 S.W.2d 455 (Tex.Cr. App.1984), and in this light the standard is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 97 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 563 (1979). This standard for review of the sufficiency of the evidence to sustain a conviction is now the same in both direct and circumstantial evidence cases. *Houston v. State,* supra.

Applying this standard, it is clear that a rational trier of the facts could not have found from the evidence beyond a reasonable doubt the essential element that appellant used and presented the credit card as that element was charged in the indictment. This is so despite the highly suspicious circumstances presented by the evidence. A conviction cannot be sustained if the evidence leaves a reasonable doubt as to the guilt of the accused. *Jackson v. Virginia,* supra. A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State,* 673 S.W.2d 190 (Tex.Cr.App.1984).

Just why this case was chosen as a vehicle to again bury one rule and announce the birth of another dealing with hearsay when the hearsay here was totally immaterial, is not made clear unless it was something that just appealed to the majority's fancy, and it decided it had the muscle to do it.

I dissent for all reasons stated. The Court of Appeals reached the right result.

CLINTON, Judge, dissenting.

Of all appellate courts in the State of Texas, only this Court has jurisdiction, power and authority to promulgate general rules governing post trial, appellate and review procedure in criminal law matters. Article 44.33(a), V.A.C.C.P., Article 44.-45(c), *id.* and House Bill 13, Acts 1985, 69th Leg., Ch. 685, 12 Vernon's Texas Session Law Service 1985, 5136. As pertinent here this Court has promulgated a set of Rules of Post Trial and Appellate Procedure in Criminal Cases. Cited as Tex.Cr.App. Rule ——, those rules govern, *inter alia,* procedures in criminal cases in the discretionary review of a decision of a court of appeals by this Court. Tex.Cr.App. Rule 3.

Of all appellate courts in the State of Texas, this Court is obliged to adhere to rules it promulgates unless suspended pursuant to Tex.Cr.App. Rule 4. That rule provides, however, it *"shall not be construed to allow any court to suspend the requirements or provisions of the Code of Criminal Procedure." Id.*[1] Today though, a majority would have the Court violate its own rules and the Code of Criminal Procedure.

On direct appeal appellant challenged sufficiency of evidence to support the judgment of conviction. Represented by the local district attorney, the State resisted his challenge on the facts of the matter; it did not then claim that unobjected hearsay has probative value.

The Fort Worth Court of Appeals applied the "well settled [rule] in Texas that hearsay has no probative value, even if admitted without objection, and will never form the basis of a judgment because it is wholly incompetent." Disregarding testimony it found to be hearsay, the Fort Worth Court of Appeals concluded remaining evidence is insufficient and, accordingly, reversed the conviction and ordered that a judgment of

---

**1.** All emphasis is mine throughout unless otherwise indicated.

acquittal be entered. The State did not file a motion for rehearing.

In his petition for discretionary review the local district attorney presented but one ground for review, *viz:*

> "The judgment must be reversed and remanded for trial error, not reversed and rendered for insufficient evidence."

The State Prosecuting Attorney independently filed his own petition for discretionary review.[2] It presents three questions for review, the last of which asks, "Is unobjected to hearsay devoid of probative value?"[3]

Article 44.45, § (b)(1), V.A.C.C.P. provides: "The state or a defendant in a case may petition the Court of Criminal Appeals for *review of the decision* of a court of appeals in that case." Because the Fort Worth Court of Appeals was never called on to consider the third question for review the State Prosecuting Attorney poses, that court did not render a "decision" for this Court to "review" on that question. "The Rules of Post Trial and Appellate Procedure in Criminal Cases governing petitions for discretionary review in this Court do not authorize review of claims which have not been presented in orderly fashion and determined by the appropriate Court of Appeals." *Lambrecht v. State,* 681 S.W.2d 614, 616 (Tex.Cr.App.1984).

The statute and our rule recognize that this Court may grant review on its own motion. Article 44.45(a), V.A.C.C.P., and Tex.Cr.App. Rule 303. However, we did not do that in this case.

In sum, although the parties to the litigation never joined issue in the trial court or on direct appeal, and contrary to every statute and rule on the subject, a majority wills this Court "to reach out" and to strike

down a "well settled" rule of law that has served the jurisprudence of this State practically from the beginning. *Belverman v. The State,* 16 Tex. 130 (1856).[4]

Furthermore, concepts of due process and due course of law remain viable in an appellate process and are implemented by all sorts of procedural rules and practice. For example, when we grant a petition for discretionary review the petitioning party is to file a brief, after which the opposing party shall do so. In support of their respective positions each is entitled to present oral argument. Tex.Cr.App. Rules 306 and 307. But in the instant cause since we initially refused both petitions for discretionary review there was no occasion for either party to brief or argue anything.

Then the State Prosecuting Attorney filed his motion for rehearing mainly contending this Court erred in failing to grant review "on the question dealing with the validity of that portion of the Court of Appeals' judgment which ordered that the appellant be acquitted." Only incidentally did the motion reurge that "aside from the hearsay in question" the evidence is insufficient and that "unobjected to hearsay has probative value"—merely making reference to its earlier petition for discretionary review. See n. 3, *ante.* The prayer sought particular actions by the Court, *viz:*

> "Wherefore, the State prays that this motion for rehearing be granted; *that the State's Petitions for Discretionary Review be granted;* that the case be set for submission to the Court of Criminal Appeals on oral argument; that after submission, this Court reverse the decision of the Court of Appeals and affirm the judgment of the trial court."

---

**2.** Though the majority may not have noticed since it does not decide the point, the petition appears to be untimely filed.

**3.** The "argument" on that matter consists of fifteen lines in two short paragraphs: It notices Texas Rules of Evidence, Rule 802; it points out that "only 1½ jurisdictions" in this country "cling to said absurd notion;" it quotes from the dissenting opinion of Judge Odom in *Frazier v. State,* 600 S.W.2d 271, 273 (Tex.Cr.App.1979); it

cites condemnations by Wigmore and McCormick and Ray.

**4.** "But mere hearsay is not only not the best, nor even secondary evidence; it is no evidence." *Id.,* at 132. Accord: *Ex parte Thrash,* 167 Tex. Cr.R. 409, 320 S.W.2d 357, 359 (1959). As stated in *Ex parte Martinez,* 530 S.W.2d 578 (Tex.Cr. App.1975), "[H]earsay evidence has no probative value." *Id.,* at 580.

A majority granted the motion for rehearing without identifying any ground for doing so.[5] It did not grant either petition for discretionary review and thus bypassed the mandate of Tex.Cr.App. Rule 306 that briefs be filed and of Rule 307 that parties may make oral argument. The majority did not invite oral argument. The cause was submitted on rehearing *sans* briefs and oral argument.

The majority, therefore, causes the Court to flout its own orderly procedure in order to pronounce a significant change in the hearsay rule of evidence. The majority can make up its own rules as it goes along simply because it outnumbers the minority. It may well rue the day.

I dissent.

TEAGUE, Judge, dissenting.

In 1980, before five of the present members of this Court, including this writer, were elected to this Court, an aggressive and assertive majority of this Court, without taking into consideration the fact that due process and due course of law must be satisfied in criminal trials, ruled in *Frazier v. State*, 600 S.W.2d 271 (Tex.Cr.App.1980), that unobjected to hearsay testimony has probative value in a revocation proceeding and could constitute sufficient evidence to support an order revoking probation. The only basis for this decision was apparently the fact that at least five judges of this Court became mesmerized by the following statement that Judge Odom made in the dissenting opinion that he filed in that cause, which dissenting opinion was ultimately adopted by the then aggressive and assertive majority of the Court as the majority opinion of this Court: "Texas and Georgia are the only two jurisdictions which have followed the rule that unobjected to hearsay testimony has no probative value and will not support a judgment."

(273). Because my research reveals that this statement is totally and absolutely unverified as a matter of law, *Frazier*, supra, has no foundation for its holding that unobjected to hearsay testimony can be considered in judging the sufficiency of the evidence in a revocation of probation proceeding. It should be post haste expressly overruled.

In the dissenting opinion that Presiding Judge Onion filed in *Frazier*, supra, he exclaimed: "Batten down the hatches. The majority, with their disdain for precedent, stare decisis and revocation proceedings in particular, are headed for 'greater' things. They are only laying the foundation for extending the rule narrowly adopted today to all criminal trials. Let there be no mistake, and let the bench and bar beware of what is coming." (275).

Wait no longer, Presiding Judge Onion and the members of the bench and bar of this State. Today, another aggressive and assertive majority of this Court, with its similar disdain for precedent, stare decisis, and just good old plain common horse sense, has concluded that in judging the sufficiency of the evidence in any criminal case, the rule that unobjected to hearsay evidence is without probative value, simply because of age, should be post haste dispatched to Davey Jones' footlocker, where this Court stores its "old" but sound decisions after one of its temerarious bouts of geriatricide. Where is that Governor of Colorado who advocated that because old persons are no longer productive they should be killed? Maybe lurking somewhere in the corridors of this Court?

The present aggressive and assertive majority of this Court is so bold in its endeavors that it cannot even wait until September 1, 1986, when the Texas Rules of Criminal Evidence, which were conceived with-

---

**5.** If the majority really believes it granted the State Prosecuting Attorney "leave to file a motion for rehearing" it is mistaken, for there is none nor is one required. Tex.Cr.App. Rule 309(c) provides that five members of the Court may vote to grant rehearing "in whole or in part" and Rule 309(d) provides that the Clerk will give all parties "notice of disposition of the motion." If the majority also believes that its "disposition" of the motion was "to consider the correctness of the holding by the court of appeals," it is equally mistaken, for the reasons given *ante*.

out public debate, and behind closed doors, and later given birth without public debate, and behind closed doors, become effective. The aggressive and assertive majority thus induces labor today in order to give premature birth to a creature that only prosecutorially oriented persons, academicians, and law professors could love.

I am also compelled at this time to echo the comments that Presiding Judge Onion recently made in the dissenting opinion that he filed in *Hypolite v. State*, 647 S.W.2d 294, 296 (Tex.Cr.App.1983): "Another old and tested rule bites the dust so some judicial warriors can hang another scalp on their belts. See *Hankins v. State*, 646 S.W.2d 191 (Tex.Cr.App.1983) (abolition of the necessity to ever charge on the law of circumstantial evidence); *Ex parte McWilliams*, 634 S.W.2d 815 (Tex.Cr.App. 1982) (opinion on State's motion for rehearing) (abolition of the carving doctrine); *Faulder v. Hill*, 612 S.W.2d 512 (Tex.Cr. App.1981) (authorizing the right of the State to appeal in certain circumstances despite constitutional and statutory prohibitions)." In *Hypolite*, supra, a majority of this Court abolished the rule of law that a motion to dismiss the appeal had to be notarized.

I also believe that Judge Roberts, a former member of this Court, if he were still on the Court, would repeat today what he stated in the dissenting opinion that he filed in *Butler v. State*, 493 S.W.2d 190, 198 (Tex.Cr.App.1973), to which saying I subscribe: "I am not a slave to stare decisis as to adhere to holdings that are not reasonable or rational, simply because they are old ... But the fact that other jurisdictions have followed a different rule does not make our rule unreasonable."

"To that great warrior (unobjected to hearsay testimony is without probative value in judging the sufficiency of the evidence) ... who has served us well, I can only say: Mortis momentum est ultimum vitae momentum." *Hankins v. State*, 646 S.W.2d 191, 221 (Tex.Cr.App.1983) (Teague, J., dissenting opinion).

Ah, but today an aggressive and assertive majority of this Court causes Texas to now be able to keep up with the Joneses. What happened to the independent spirit that we Texans have so long held to be so dear? Apparently, G.T.H.

The majority opinion also tells us that it will demonstrate why the precedent for the rule that unobjected to hearsay testimony may be considered in judging the sufficiency of the evidence has no reasonable underpinnings, and we should not "bury our heads in the sand when such criticism (against the rule) is voiced." Alas, although we are told that we are about to witness a demonstration, such demonstration, like the reasons the majority opinion gives why the rule is no longer viable, represents only an illusion. Where is that fellow from France who lighted up Houston's skies not too long ago? Because the aggressive and assertive majority apparently does not understand the meaning of the words exhibition or demonstration, it should contact that fellow from France, because I believe he could teach them a thing or two about what an exhibition or demonstration really is.

In light of what he writes for the Court today, I find it rather interesting that Judge Campbell stated less than a year ago the following on behalf of this Court in *Gardner v. State*, 699 S.W.2d 831 (Tex.Cr. App.1985), in which opinion all but two judges of this Court joined, and those two concurred in the result:

The court of appeals ... applied our well established rule that:

'Hearsay is without probative value, even if admitted without objection. (Citations omitted). It constitutes no evidence, and will not be considered in determining the sufficiency of the evidence.' (Citations omitted).

In making this statement, Judge Campbell even directed our attention to *Belverman v. State*, 16 Tex. 131 (1856), a case that is now over 130 years old. In *Belverman*, supra, Justice Wheeler of the Texas Supreme Court, stated the following: "But mere hearsay is not only not the best, nor

even secondary evidence; it is no evidence." (132.) Apparently because it was such a well-known fact, he did not even cite any authority for the statement.

However, today is another day. Of course, as easily seen, supra, any case that is older than 100 years is always in jeopardy of being expressly overruled by an aggressive and assertive majority of this Court—simply because it is too old, or, as Presiding Judge Onion states, because the majority has the legal muscle to do that, and for no other reason.

In overruling the above long standing principle of law that has served this Court so well, that unobjected to hearsay testimony is without probative value in deciding the sufficiency of the evidence, Judge Campbell and the other members of this Court who join his opinion continue to perpetuate the following myth: "In fact, Texas (in criminal cases only) and Georgia are the only American jurisdictions that completely deny any probative value to hearsay in determining sufficiency of the evidence claims." Authority for this statement is 79 *A.L.R.2d* 890.

I state that the statement is a myth. By this, I mean that I have read the cited annotation, but find that it does not support the statement that Judge Campbell makes. J.A. Bock, the author of the annotation, actually stated the following: "It *appears* to be the general rule, supported by the overwhelmining weight of authority, that where inadmissible hearsay evidence is admitted without objection, it may properly be considered in determining the facts, the only question being with regard to how much weight should be accorded." (897–98). (My emphasis.) Thereafter, Bock lists citations from forty different states. However, if one will take the time and trouble to read all of the cases cited, or better yet, use West Law or Lexis, I believe that he will find, like my former and present staff members and I have found, that the figure is not forty, but only possibly thirty-five. Several times I have challenged representatives of the great State of Texas to present to me 48 citations from 48 different state

supreme courts that will support the statement Judge Campbell makes, but to date I have found no takers.

The statement, "Texas and Georgia are the only two jurisdictions which have followed the rule that unobjected to hearsay testimony has no probative value and will not support a judgment," probably comes to us from the law review article authored by a professor of law at St. Mary's University, Hon. Thomas Black, "Hearsay Admitted Without Objection—A Defense of Its Probative Value," 17 *South Texas Law Journal* 69 (1975), in which he made a plea to the Supreme Court of Texas for it to abolish the rule that unobjected to hearsay testimony was without probative value in judging the sufficiency of the evidence, which had long been a rule of law on the civil side of the docket. Therein, without citing the reader to any valid authorities, but citing the reader to only one citation, Black stated the following: "This restrictive attitude is shared only with Georgia." (69).

Black and his followers succeeded in their pleas because effective September 1, 1983, the Supreme Court did abolish the rule on the civil side of the street.

I pause to point out that because our judicial brethern on the third floor might have goofed is no excuse for this Court to also goof.

*Frazier v. State*, 600 S.W.2d 271 (Tex.Cr. App.1979), 11 *A.L.R.4th* 990 (1979), probably helped give the unverified statement a certain amount of appeal and momentum. However, but as the author of that annotation points out, even in a revocation of probation proceeding, unobjected to hearsay evidence is viewed with a great amount of caution and trepidation.

Of course, the kind of hearsay that is involved in this case, which is used to affirm the conviction of the appellant, should be viewed as being without probative value because it lacks the corroboration of an oath or affirmation.

Although it is easy to cant that "Inadmissible hearsay evidence, admitted with-

out objection, shall not be denied probative value merely because it is hearsay," without more such fails to take into consideration such things as the fact that a criminal judicial proceeding is governed by principles of due process and due course of law; the right of confrontation that is guaranteed a defendant in a criminal trial; and the right to the effective assistance of counsel, etc.

Most of the critics of the rule that unobjected to hearsay does not have probative value in judging the sufficiency of the evidence usually make their pitch, as Black did, see supra, along the lines that "It reduces litigation to a game"; "it promotes game playing." I believe that such foolish thinking is predicated upon several erroneous beliefs, in particular, that all licensed attorneys relish a victory on appeal over a victory in the trial court. Only a person who lives and sleeps in a tree or in an academic ivory tower could believe this. This kind of postulation actually represents perverse thinking in the highest degree, academicism at best.

On October 27, 1983, the Fort Worth Court of Appeals reversed the trial court's judgment of conviction and ordered that a judgment of acquittal be entered on behalf of the appellant after it found that without the unobjected to hearsay evidence, the evidence was insufficient to sustain the conviction of the appellant. On April 4, 1984, this Court refused the petitions for discretionary review that had been filed by the District Attorney of Dallas County and Hon. Alfred Walker, Assistant State Prosecuting Attorney. However, on December 5, 1984, this Court granted the motion for rehearing that had been filed by Walker. In a multifarious ground for review, Walker again urged this Court to overrule the above rule. Because the ground for review is multifarious, I would do what this Court often does to defendants, and that is hold that because it is multifarious it is not subject to review. Furthermore, for the reasons expressed by Judge Clinton in the dissenting opinion that he has filed in this cause, I would put the improvidently granted stamp to the State's motion for rehearing.

I join part of the dissenting opinion that Presiding Judge Onion has filed in this cause, in which he so eloquently states, inter alia, the following: "The majority now reverses the Court of Appeals and affirms the conviction. In doing so the majority finds it necessary to slip into the graveyard and exhume the rule discussed in Cruz, and then, with a flourish, rebury the rule with a funeral oratory that the black-hatted villain (meaning rule), so 'inherently illogical,' is now dead and is being 'deep sixed' by an intelligent and enlightened majority far superior to those who applied the rule for over 130 years. All that is missing is the request 'Please applaud'. . . . Just why this case was chosen as a vehicle to again bury one rule and announce the birth of another dealing with hearsay . . . is not made clear unless it was something that just appealed to the majority's fancy, and it decided that it had the muscle to do it."

The majority opinion states the following: "Since, *as will presently be demonstrated*, inadmissible hearsay does possess probative value, it should be considered in determining the sufficiency of the evidence." (My emphasis.) I am still waiting for the demonstration because I cannot find it in the opinion. Other than referring the reader to Black's law review article, quoting from some off-the-wall foreign court decisions, that only mimic the critics regurgitating what the critics have said, referring the reader to inapplicable areas of the law, such as extradition, and simply concluding "The time has come for this Court to acknowledge the lack of any rational underpinning for the special treatment of hearsay in sufficiency of the evidence cases," Judge Campbell, on behalf of the aggressive and assertive majority of this Court, leaves the reader breathlessly waiting for the demonstration. Perhaps, however, the demonstration is only an illusion that Judge Campbell has created.

If the majority opinion is correct, the appellant should have a "gut" not only

when he pursues his post-conviction application for writ of habeas corpus but also when he sues his trial lawyer for damages on the civil side of the street for malpractice.

To the overruling a rule of law that has served Texas criminal jurisprudence well for over 130 years, I respectfully dissent.