Affirmed and Memorandum Opinion filed June 14, 2007








Affirmed and Memorandum Opinion filed June 14, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00090-CR

_______________

 

AARON REYES RANGEL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 180th District Court

Harris County, Texas

Trial Court Cause No.  999,638

                                                                                                                                                

 

M E M O R A N D U M   O P I N I O N

Appellant
Aaron Reyes Rangel contends the evidence is legally and factually insufficient
to (1) support his conviction for aggravated sexual assault of a child and
(2) establish the qualifications of the outcry witness.  He also contends
the trial court erred by refusing to permit his requested defense of Aparental alienation syndrome.@  Finally, he contends he was denied
his right to effective assistance of counsel.  We affirm.

 








I.  Factual and Procedural Background

The
complainant, E.O., was born on January 7, 1988.  When she was sixteen years
old, E.O. told her mother that appellant, who is her uncle, had molested her
from the time she was about four years old until she was eight or nine years
old.  After an investigation by the Houston Police Department (AHPD@), appellant was charged with
aggravated sexual assault of a child.  At trial, the State presented the
testimony of six witnesses during its case in chief.  The defense called
appellant and his wife and the complainant=s maternal aunt  The State also
called one of appellant=s wife=s sisters, who is also the twin sister of the complainant=s mother, as a rebuttal witness.

Mikki M.
Stephens, an investigator with the HPD juvenile sex crimes division, testified
that she received a report of child sexual assault in June 2004.  After taking
a statement from E.O.=s older brother, J.O., Stephens established contact with the
children=s mother, Rose, in August 2004. 
Stephens explained that she did not speak with appellant during her
investigation because she was concerned that he would Aflee.@  According to Stephens, her
investigation consisted of interviewing Rose, J.O., E.O., and watching a video
interview of E.O. conducted by one of the forensic interviewers at the Children=s Assessment Center.  She also
reported that she had reviewed E.O.=s hospital records, which revealed
that E.O.=s hymen was still intact.  Stephens testified that E.O. told her that she
had Anever gotten along with her mother@ and that E.O. did not feel she could
confide in her parents because they Ahad problems.@  Stephens also stated that she dealt
with kids who made false accusations of sexual abuse Aall the time,@ but that it is also very common for
a child to delay making an outcry statement until long after the abuse. 








The State
then presented the testimony of its designated outcry witness, Rose.  She
testified that appellant is married to her sister Stephanie.  Rose stated that
she had been married to her husband, José, for twenty-one years, and that they
have three children, E.O., J.O., and a younger son.  She indicated she has a
large, close-knit family in the Houston area and that the family often got
together for holidays and celebrations.  Before E.O.=s outcry, Rose, José, Stephanie, and
appellant had all gotten along very well.  

According
to Rose, when E.O. was sixteen, she told her mother that when she was younger
and had spent the night at appellant=s house, he had behaved in a sexually
inappropriate manner.  Rose testified that E.O. told her she remembered the
first incident occurred when she was about four, and that appellant Aput his mouth on her private.@  Rose stated E.O. told her A[w]here he had her completely naked
was once; but, the other times was [sic] several times, every time she would
spend the night over there.@  According to Rose, when E.O. was about four, appellant gave
her money to buy a special dress for E.O. because she was starting
pre-kindergarten.  Rose testified that appellant and Stephanie, who did not
have children of their own, had often asked her to allow E.O. and J.O. to stay
with them, and Rose had agreed.  But Rose stated that when E.O. was around
eight or nine years old, she no longer wanted to stay at appellant=s house and cried when it was
suggested.  Rose did not make her stay overnight when E.O. resisted the
visits.  

Rose
further testified that E.O. was a normal child growing up, and that she had
never been concerned about allowing her children to stay with appellant and
Stephanie.  She also indicated that E.O. had been seeing a therapist for a
month or two before she made her outcry statement.  She stated that she had
sent E.O. to a therapist because E.O. seemed angry and she could tell Asomething was going on.@  Rose testified that E.O. had lost
around eighty pounds between her fifteenth and sixteenth birthdays, and the
family was concerned that E.O. might have an eating disorder, although none was
diagnosed.  According to Rose, when E.O. turned fifteen, she did not want a Aquinceañera@ celebration for her fifteenth
birthday.  E.O. also refused to come out of her room during her sixteenth
birthday party.  Rose affirmed that E.O.=s outcry occurred when the family was
arranging a large graduation party for J.O.  She also agreed that there were
fewer restrictions on E.O.=s activities after her outcry, but she indicated that this
change was due to E.O.=s age rather than her outcry.








J.O.
testified that he remembered a specific occasion when he and E.O. had spent the
night at appellant=s apartment, and described the events as follows:  Early in
the morning after he and E.O. had spent the night, his aunt Stephanie left the
two children with appellant in her bedroom while she went into the bathroom to
take a shower.  He heard E.O. crying, but because he was on the floor on the
opposite side of the bed, he could not see appellant or E.O.  He also heard
appellant trying to calm E.O.  J.O. stated that he and his sister stopped going
over to appellant=s house when he was around eleven years old because E.O. did
not want to go over there any more.  He testified that he never saw anything
inappropriate between E.O. and appellant.  J.O. indicated that before E.O.=s outcry, everyone in the family got
along very well.  He was not aware of any fighting between his parents and
appellant and Stephanie.  He also did not know of any problems between E.O. and
appellant and Stephanie.  He stated that their mother did not allow E.O. to go
out before she was sixteen, but that she did let her go out after she turned
sixteen, and that E.O. and his parents had become closer since she made her
outcry.  He further stated that E.O. had more freedom since she made the
allegations against appellant.








The
State presented two other witnesses before E.O. testified.  Dr. David Robinson,
an emergency department doctor who examined E.O. when Rose took her to the
hospital after she made her outcry, testified that a sexual forensic exam was
not done in this case because many years had passed since the alleged sexual
assault.  He also indicated it is unusual for someone to come into the hospital
to report an assault after so much time had elapsed.  Dr. Lawrence Thompson,
the director of therapy and psychological services at the Children=s Assessment Center, defined an Aoutcry.@  Dr. Thompson, who testified that he
had never met E.O. or her family, described several reasons a child might delay
making an outcry regarding sexual assault, including fear of or ambivalence
towards the perpetrator.  According to Thompson, delayed outcry is very common
in cases involving family members and very young children.  Thompson testified
that young children are often confused and do not have the ability to tell what
happened, or even know that the behavior was inappropriate.  Thompson described
Aparental alienation syndrome@ as a situation in which a child may
be pressured into making false allegations of sexual abuse.  He also stated
that a child might make a false accusation when coached or pressured by his or
her parents to do so.

E.O.,
who had just turned eighteen at the time of trial, was the last witness to
testify during the State=s case-in-chief.  She stated that when she was younger, she
and J.O. frequently spent time with appellant and his wife and that the two
children spent the night at appellant=s apartment several times.  According
to E.O., appellant began touching her inappropriately when she was about four
years old, around the same time that appellant had purchased a particular dress
for her.  E.O. stated that on the first occasion, appellant took her into his
bedroom while they were alone at his apartment and laid her down on the bed. 
He then took off her underwear and put his hands and his mouth on her vagina. 
He turned her over and put his hands on her bottom.  Appellant told her not to
tell anyone, and she did not because she was scared and did not know how to
tell anyone.  She stated that, after the first incident, he molested her on
other occasions.  Although she could not remember specific details, she
testified that he put his mouth on her genitals more than two times.  

E.O.
also recounted another incident that occurred when she was around eight or
nine.  According to E.O., appellant woke her up and told her to get in the bed
with him when her aunt left the room to take a shower.  Her brother, J.O., was
sleeping on the floor on the other side of the bed.  E.O. testified that
appellant started to lift her shirt and kiss her neck, and she began crying. 
Appellant told her to go back on the floor, but J.O. woke up and asked what was
wrong.  E.O. did not tell J.O. what had happened.  After she was eight or nine,
she refused to go over to appellant=s apartment to spend the night
because she did not want appellant to molest her any more.  








Although
E.O. agreed that Asomething pretty serious@ had occurred between her mother and
her aunt Stephanie around the time of E.O.=s birth, she described the
relationship between her family and appellant and Stephanie as Aclose@ until E.O. told her mother about the
assaults.  She testified that her mother had been fairly strict and protective
of her when she was younger but that she was allowed more privileges after she
turned sixteen.  E.O. recounted that she did not want to have a Quinceañera
celebration, and that she stayed in her room during her sixteenth birthday
party because appellant was there and she did not want to see him.  She
testified that although she made her outcry statement shortly before her
brother=s graduation party, the family had
the party and her outcry did not affect it.

After
the State rested, Stephanie testified that Rose was mean to her and to José and
that Rose mistreated E.O.  According to Stephanie, E.O. never spent the night
at the apartment Stephanie and appellant shared.  She also indicated that E.O.
and Rose became much closer after E.O. made her allegations, and that E.O. was
subsequently given more freedom.  She testified that E.O. lost a significant
amount of weight about three years ago, and that Aa lot@ of her family thought that E.O. had
psychological problems.  Stephanie stated that she had had Amajor problems@ with E.O.=s mother and father when E.O. was
about eight or nine.  According to Stephanie, E.O. fabricated these allegations
and appellant never inappropriately touched E.O.  Appellant similarly testified
that E.O. never spent the night at his house, that he was never alone with E.O.,
and that he never touched her inappropriately.  He also denied giving Rose
money to buy E.O. a dress.  He testified that J.O. was favored over E.O., that
E.O. did not get along with her parents, that E.O. was Akind of weird,@ and that E.O. was jealous of her
brother.  He further stated that he had some problems with Rose=s husband a few times in the past,
but that the families had always gone to gatherings together and spent time
with each other until he was arrested.  








On
rebuttal, the State called Rose=s twin sister Debbie, who testified that the entire family
was very close and that they frequently got together for holidays and
celebrations.  According to Debbie, Rose treated J.O. and E.O. equally and Rose
did not mistreat E.O.  She did not know whether E.O. and J.O. had ever spent
the night at appellant=s apartment.  She was unaware of any problems between
Stephanie and Rose, and had not seen Stephanie acting fearful around Rose=s husband.

The jury
found appellant guilty as charged in the indictment.  Appellant pled true to an
enhancement paragraph, and the jury sentenced him to thirty years= confinement in the Institutional
Division of the Texas Department of Criminal Justice.  This appeal timely
followed.

II.  Issues Presented

Appellant
presents four issues for our review.  In his first and third issues, he
contends the evidence is legally and factually insufficient to support his
conviction for aggravated sexual assault and to establish that the State=s outcry witness was over the age of
eighteen when the outcry was made.  In his second issue, he challenges the
trial court=s refusal to permit his requested defense of Aparental alienation,@ which he contends would have caused
the complainant to make a false accusation.  Finally, in his fourth issue,
appellant asserts that he was denied effective assistance of counsel because
his trial counsel failed to investigate the mental health status of the
complainant. 

III. Analysis

A.        Sufficiency
of the Evidence








In
determining the merits of appellant=s first issue challenging the legal
and factual sufficiency of the evidence supporting his conviction, we examine
the evidence in the light most favorable to the verdict to determine whether
any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Mason v. State, 905 S.W.2d 570,
574 (Tex. Crim. App. 1995) (en banc).  We do not ask whether we believe that
the evidence at trial established guilt beyond a reasonable doubt.  Jackson,
443 U.S. at 318B19, 99 S. Ct. At 2788B89.  Rather, we
determine whether any rational trier of fact could have found the essential
elements of aggravated sexual assault of a child beyond a reasonable doubt.  See
Mason, 905 S.W.2d at
574.  As relevant here, a person commits the offense of aggravated sexual
assault of a child if the actor intentionally or knowingly causes the sexual
organ of a child under fourteen to contact the mouth of the actor.  See Tex. Penal Code Ann. '
22.021(a)(1)(B)(iii), (a)(2)(B) (Vernon 2005).  A child is a person younger
than seventeen years of age who is not the spouse of the actor.  See id.
' 22.011(c)(1).  

We begin a factual sufficiency review by viewing all of the
evidence in a neutral light. See Watson v. State, 204 S.W.3d 404, 414
(Tex. Crim. App. 2006) (citing Cain v. State, 958 S.W.2d 404, 408 (Tex.
Crim. App. 1997) (en banc)).  We will not reverse unless we are able to say,
with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury=s verdict.  Id.
at 417.  We may not reweigh the evidence or substitute our judgment for that of
the jury.  See Cain, 958 S.W.2d at 407.  Unless the record clearly
reveals a different result is appropriate, we Amust defer to the
jury=s determination
concerning what weight to give contradictory testimonial evidence because
resolution often turns on an evaluation of credibility and demeanor.@  Johnson v.
State, 23 S.W.3d 1,
8 (Tex. Crim. App. 2000) (en banc).








Appellant
contends that the evidence is legally and factually insufficient to support his
conviction because E.O. was a troubled teenager who had emotional difficulties,
suffered from depression, and failed to make an outcry for twelve years.  He
argues that E.O. was not credible because of her inability to accurately
remember where, when, or how many times she was assaulted.  He also complains
that E.O.=s motive to lie was revealed by evidence showing that E.O.=s family life and relationships
improved Adramatically@ after she accused appellant of sexual assault.[1]  He further
alleges that the timing of E.O.=s outcry, which occurred shortly before a
large graduation party for her brother, indicates that her outcry was merely an
attempt to gain attention.  In addition, he complains that Rose, the State=s outcry witness
and the only person whose testimony corroborated E.O.=s allegations, was
not shown to be over eighteen at the time of the outcry statement as required
by statute.[2]  He attacks the sufficiency of the
police investigation, emphasizing that the investigating officer, Mikki
Stephens, did not speak with any other family, friends, or other potential
witnesses before filing charges, and never attempted to speak with appellant. 
He also points out that he has never been previously accused of such a Adeviant act,@ nor has he been accused of such
behavior since E.O.=s outcry.[3]








In
support of his arguments, appellant cites evidence that he contends undermines
the witnesses= credibility, but we are not free to reevaluate credibility.  See Johnson v. State,
967 S.W.2d 410, 412 (Tex. Crim. App. 1998).  Moreover, the record reflects that
the complainant was under eighteen at the time of the offense.  Thus, her
uncorroborated testimony is sufficient to support the conviction.  See Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon Supp. 2002); Lindquist v. State, 922 S.W.2d 223,
227 (Tex. App.CAustin 1996, pet. ref=d).  Here,
however, the State offered corroborating testimony: E.O.=s mother testified
to E.O.=s outcry statement
and corroborated E.O.=s testimony regarding events surrounding
the assaults, and J.O.=s testimony supported E.O.=s description of
her last encounter with appellant.  Although appellant and his wife insisted
that E.O. and J.O. had never spent the night at their apartment and that none
of these events happened, the jury was permitted to believe or disbelieve any
part of any witness=s testimony.  See Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000) (en banc).

After viewing the evidence in the light most favorable to
the verdict, we conclude that a rational jury could have found, beyond a
reasonable doubt, each of the essential elements of aggravated sexual assault
of a child.  Viewing the evidence in a neutral light, we are unable to find an
objective basis in the record supporting appellant=s contention that
the great weight and preponderance of the evidence contradict the jury=s verdict. 
Accordingly, we conclude the evidence is both legally and factually sufficient
to support the verdict, and we overrule appellant=s first issue. 

B.        Defense of AParental Alienation@

In his
second issue, appellant asserts that the trial court erred by refusing to
permit his requested defense of A>parental alienation=, which would cause complainant to
make a false accusation.@  Although appellant=s briefing of this issue is less than
clear, appellant presents three main contentions in support of this issue, each
of which we discuss in turn.  








First,
appellant contends the trial court Arepeatedly refused to allow [him] to
question witnesses about the alleged rape of Rose@ by a member of appellant=s family, but he offers no citation
to the record indicating that he attempted to introduce such evidence. 
Moreover, our review of the record reveals that appellant did not question Rose
regarding this possible basis for bias against him or otherwise attempt to
introduce this evidence during her testimony or in his bill of exceptions. 
Thus, he has not preserved error on this issue as it relates to Rose.  See Tex. R. App. P. 33.1; Tex. R. Evid. 103(a)(2). 
Contrary to appellant=s assertions, he was not denied the opportunity to
cross-examine E.O. regarding her possible bias from the alleged rape; he was
simply not permitted to question her concerning events of which she had no
personal knowledge.[4]  For example,
when E.O. agreed with defense counsel that a Apretty serious@ event occurred around the time she
was born, the trial court sustained the State=s objection that she had no personal
knowledge of the event.  See Tex.
R. Evid. 602 (requiring that a witness=s testimony be based on personal
knowledge).  But appellant chose not to question E.O. about her belief,
if any, that her mother had been raped by a member of appellant=s family or any bias she might have
relating to any such belief.

Second,
appellant contends that Dr. Thompson, the State=s expert witness on delayed outcry, Aadmitted that he had heard of
Parental Alienation Syndrome, which he explained holds that after an outcry of
sexual assault, the child is much closer to the parents, and >children can be inappropriately
pressured to make false allegations of child sexual abuse.=@ But Dr. Thompson=s testimony regarding this syndrome
consisted only of the following:

Defense:                     Do you know what Parental
Alienation Syndrome is?

Dr. Thompson:           I am familiar with that term.

Defense:                     Well, have you ever dealt
with children that were suffering from that?

Dr. Thompson:           No, I have not dealt with any
Parental Alienation Syndrome children.

Defense:                     Do you know what that
means?

. . .

Dr. Thompson:           Parental Alienation Syndrome,
I am not an expert, but as I understand [it] has to do with a way that children
can be inappropriately pressured to make false allegations of child sexual
abuse.

 








Dr. Thompson did not
indicate that this syndrome has any bearing on the parent-child relationship
after an outcry has been made.  Moreover, on appeal, appellant explains this
defensive theory as one generally raised in family law cases Awhere one party or parent tries to
destroy, thwart[,] or harm the relationship between parent and child by certain
actions.@  He does not explain how this
defensive theory applies in this case, in which there is no parental or blood
relationship between the victim and appellant, nor has he cited any authority
for its application in such circumstances.

Third,
appellant contends that, outside of the jury=s presence, the State disclosed that
E.O.=s father and appellant=s wife Stephanie had an extramarital
affair and that the trial court granted the State=s motion in limine regarding evidence
of this affair.  But A[i]t is axiomatic that motions in limine do not preserve
error.@  Harnett v. State, 38 S.W.3d
650, 655 (Tex. App.CAustin 2000, pet. ref=d).  Appellant=s arguments seem to conflate evidence
of Rose=s rape, introduced through a bill of
exceptions, with evidence of the affair between Rose=s husband and appellant=s wife, which was the subject of the
State=s motion in limine.  But appellant
cites nothing in the record demonstrating his attempts to offer evidence of the
affair.  Thus, his appellate arguments regarding this evidence have been
waived.  See Tex. R. App. P. 33.1(a),
38.1(h). 








In sum,
the trial court did not prevent appellant from attempting to show that E.O.=s parents influenced her to fabricate
allegations of sexual abuse; rather, the trial court merely limited E.O.=s cross-examination to matters about
which she had personal knowledge.  Appellant did not attempt to introduce
evidence of the rape or the affair through Rose, although Rose was the only
witness at trial who would have had personal knowledge of these events. 
Appellant has not directed us to any other portion of the record that
demonstrates an attempt to introduce such evidence of either event, and has not
explained how his defensive theory, allegedly applicable in family-law cases,
applies to a case involving the sexual assault of a child by her uncle.  Under
these circumstances, we cannot say the trial court erred in refusing, if it
indeed did, to permit appellant to offer a defense based on parental alienation
syndrome.  We therefore overrule appellant=s second issue.

C.      Outcry
Witness

In appellant=s third issue, he complains that evidence of E.O.=s descriptions of the abuse to her mother
were improperly admitted because the State failed to establish that E.O.=s mother was over the age of eighteen
at the time of the outcry statement.  See generally Tex. Code Crim. Proc. Ann. art. 38.07,
38.072  (Vernon Supp. 2002).  Under these provisions, the first person over the age of eighteen to
whom a child complainant makes a statement describing the sexual offense may
testify at trial regarding that statement.  Id. art. 38.072.

Generally, to preserve error for appellate review, a
defendant must make a proper and timely objection.  Beckham v. State, 29
S.W.3d 148, 153-54 (Tex.App.CHouston [14th Dist.] 2000, pet. ref=d).  Failure to
object waives the complaint on appeal.  Id.  But a general hearsay objection suffices to
shift
the burden to the State to prove an outcry statement was admissible pursuant to
article 38.072 or some other hearsay exception.  Long v. State, 800
S.W.2d 545, 548 (Tex. Crim. App. 1990) (per curiam) (en banc); see also
Zarco v. State, 210
S.W.3d 816, 828 (Tex. App.CHouston [14th Dist.] 2006, no pet.).  








Here,
appellant objected to Rose=s testimony, stating, AJudge, I am not sure that this
witness is the proper outcry witness, because in the offense report it stated
that she, [E.O.], was talking to her cousin and crying and . . . .@  Rose subsequently testified that
the cousin to whom E.O. spoke on the phone was fifteen years old at that time;
thus, this cousin was not the proper outcry witness as suggested by appellant=s objection.  Appellant raised no
further objections to Rose=s continued testimony regarding E.O.=s outcry statement to her; therefore,
appellant waived his objections under article 38.072 of the Code of Criminal
Procedure.  See Beckham, 29 S.W.3d at 154.  Moreover, the argument is without
merit because the State established that Rose was over eighteen at the time of
E.O.=s outcry statement.[5] 
Finally, as previously discussed, E.O.=s testimony need not have been
corroborated in order for it to support appellant=s conviction.  

We
overrule appellant=s third issue. 

D.      Claims
of Ineffective Assistance of Counsel 

In his final issue, appellant contends that his trial
counsel rendered ineffective assistance by failing to determine E.O.=s mental health
status.  He contends that, because the clerk=s record contains
medical records indicating E.O. was taking a prescription anti-depressant and
witnesses testified that she was seeing a therapist and had lost a great deal
of weight, appellant=s defense counsel should have questioned
E.O. about her mental health issues and how these might relate to her
recollection or her accusation.








We review claims of ineffective assistance of counsel under
the standard set forth in Strickland v. Washington.  466 U.S. 668, 104
S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  Under the Strickland test, an
appellant must prove that his trial counsel=s representation
was deficient, and the deficiency was so serious that it deprived the appellant
of a fair trial.  Id. at 687, 104 S. Ct. at 2064.  To establish both
prongs, an appellant must prove by a preponderance of the evidence that counsel=s representation
fell below the objective standard of prevailing professional norms, and there
is a reasonable probability that, but for counsel=s deficiency, the
result of the proceeding would have been different.  Id. at 690B94, 104 S. Ct. at
2066B68.  An appellant=s failure to
satisfy one prong makes it unnecessary for a court to consider the other
prong.  Id. at 697, 104 S. Ct. at 2069.  This test is applied to claims
arising under the Texas Constitution as well as those arising under the United
States Constitution. Hernandez v. State, 726 S.W.2d 53, 56B57 (Tex. Crim.
App. 1986) (en banc).

Our review of defense counsel=s performance is
highly deferential, beginning with the strong presumption that the attorney=s actions were
reasonably professional and were motivated by sound trial strategy.  Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc).  When, as
in this case, the record is silent as to the attorney=s strategy, we
will not conclude that defense counsel=s assistance was
ineffective unless the challenged conduct was A>so outrageous that
no competent attorney would have engaged in it.=@ Goodspeed v.
State, 187 S.W.3d 390, 392 (Tex . Crim. App. 2005) (quoting Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

In this case, the record reflects that appellant=s trial counsel
questioned E.O.=s mother regarding E.O.=s mental health,
weight loss, and therapy.  In addition, he questioned E.O. regarding
counseling, and E.O. replied that she had been seeing a therapist.  Indeed, the
only evidence regarding E.O.=s mental health that was not elicited by
his trial attorney was evidence that E.O. was taking an antidepressant.  While
he did not press E.O. to discuss her mental health, the record is silent
regarding trial counsel=s strategy.  But a decision to refrain
from pressing a victim of a sexual assault may be a valid tactical decision.  See
Garrett v. State, 998 S.W.2d 307, 314 (Tex. App.CTexarkana 1999,
pet. ref=d) (noting that A[a]n attorney=s aggressive
questioning of a sexual assault victim could easily offend the jury and
prejudice@ the defendant).








The record before us provides no basis from which to
conclude that appellant received ineffective assistance of counsel.  Moreover,
appellant has not shown how his counsel=s failure to
question E.O. more aggressively about her mental health prejudiced him even
though similar evidence was elicited from E.O.=s mother.  On this
record, the evidence is insufficient to overcome the presumption that appellant=s defense counsel
provided reasonably professional representation or to demonstrate prejudice
attributable to these alleged errors.  Accordingly, we overrule appellant=s fourth issue.

IV.  Conclusion

Having overruled each of appellant=s issues, we
affirm the judgment of the trial court.

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum
Opinion filed June 14, 2007.

Panel consists of Justices Frost,
Seymore, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Appellant further asserts that the trial court
prevented him from offering evidence of E.O.=s
motive to lie, but because this evidence was not before the jury, it has no
bearing on our sufficiency determination.  See Chambers v. State, 711
S.W.2d 240, 245 (Tex. Crim. App. 1986) (en banc).  Appellant similarly argues that he was prevented from
offering evidence that E.O.=s mother was raped by a member of appellant=s family, and he contends that such evidence would have shown bias on
the part of the witnesses.  Again, however, this evidence was not before the
jury and has no bearing on our sufficiency review.  See id. 





[2]  This issue is addressed separately in section III.C
of this opinion, infra.





[3]  Additionally, appellant claims that evidence E.O.=s hymen was intact when she was
examined after her  outcry casts doubt on her credibility because E.O. had
earlier told prosecutors appellant raped her vaginally.  But appellant was
charged with sexual assault by contact, and the only testimony before the jury
during the guilt-innocence phase regarding the assault involved contact rather
than penetration.  In support of his contention that E.O. changed her
accusations, appellant points only to the State=s notice of intent to introduce extraneous offenses
at punishment.  Because these allegations were not before the jury during the
guilt-innocence phase, they have no bearing on our sufficiency determination.  See
Chambers, 711 S.W.2d at 245.





[4]  Appellant cites United States v. Abel in
support of his contention that he was prevented from exploring the potential
bias of Rose and E.O.  469 U.S. 45, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984). 
In Abel, the Supreme Court determined that evidence regarding gang
membership was relevant and admissible to indicate bias on the part of a
witness.  469 U.S. at 46B47, 105 S. Ct.
at 466.  There, the witness=s membership in
a secret prison gang was particularly relevant to show bias because the gang
had a basic creed that members would Acommit
perjury, theft, and murder on each member=s
behalf.@  469 U.S. at 47, 105 S. Ct. at 466.  Moreover, gang
membership is a fact within a witness=s
personal knowledge.  No similar predicate was offered here. 





[5]  The record shows that E.O. was sixteen at the time
of her statement, and eighteen at the time of trial; thus, her statement was
made approximately two years before trial.  In order for Rose=s outcry testimony to be admissible, Rose must have
been at least eighteen when the statement was made, and since the statement was
made two years before trial, her age at that time could be proved by
subtracting two years from her age at trial.  At trial, Rose testified that she
and her husband had been married for twenty-one years.  Consequently, Rose must
have been at least nineteen years old when her daughter made the outcry
statement two years previously.  Her age was therefore shown to fall within the
requirements of the statute.