

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-12-00629-CR

JUAN MANUEL DELEON                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1285696R

----------

## MEMORANDUM OPINION[1]

----------

Appellant Juan Manuel DeLeon appeals from his conviction for aggravated

robbery and forty-year sentence. We affirm.[2]

---

[1] *See* Tex. R. App. P. 47.4.

[2] This appeal was originally submitted without oral argument on September 30, 2013, before a panel consisting of Chief Justice Livingston, Justice Gardner, and Justice Gabriel. *See* Tex. R. App. P. 39.8; 2nd Tex. App. (Fort Worth) Loc. R. 3B(2). The court, on its own motion on June 10, 2014, ordered this appeal

# I. BACKGROUND

Aurelio Rodriguez lived with his girlfriend, Gardenia Torres. Aurelio and Appellant were very close friends. In February 2011, Aurelio planned to rob Travis and Virginia Waters with his brother Jose Rodriguez, Appellant, Appellant's brother Eddylberto DeLeon, and Ryan Garcia. Eddylberto was friends with the Waterses' grandson, John Waters, who lived with the Waterses and his mother in the same home. Eddylberto had the code to open the Waterses' garage. Eddylberto assured the others that cash, jewelry, and gold could be found in the Waterses' home.[3] Eddylberto drew a map of the home, and the participants specified what each would do during the robbery, with Aurelio agreeing to be the getaway driver. The night before the robbery, Aurelio became sick; thus, Gardenia agreed to be the getaway driver.

On February 15, 2011, Gardenia, Appellant, and Jose drove to Appellant's home to pick up Eddylberto. When they arrived, Appellant went into the house and returned to the car with a gun. Gardenia, Appellant, Jose, and Eddylberto then drove to Ryan's house and picked him up. The five then ensured that John Waters's mother was at work and not at the Waterses' home by checking the parking lot where she worked. Gardenia then drove to the Waterses' street and

resubmitted without oral argument on July 1, 2014; assigned the appeal to a new panel, consisting of Chief Justice Livingston, Justice Dauphinot, and Justice Gabriel; and assigned the undersigned to author the opinion.

[3]The Waterses previously had owned a jewelry store and had kept some of the leftover inventory.

dropped off Appellant, Jose, Ryan, and Eddylberto. Gardenia saw the four enter the Waterses' garage, carrying sacks. Gardenia drove to the end of the street to wait but stayed on the phone with Ryan so she would know when to return to pick them up.

Eighty-four-year-old Virginia, investigating a noise in her garage on February 15, 2011, was confronted by a "boy" in dark clothes with a cap on his head, a scarf over his face, and a gun in his hand. The man, who was short, pointed the gun at Virginia and forced her to lie face down on the floor.[4] Virginia was aware that four or five other men entered the house. One of the other men, who seemed to know the location of the Waterses' safe, demanded that Virginia give him the combination. One of the robbers heeded Virginia's pleas that she was in pain, helped Virginia off the floor and tied her to a chair facing the wall. The robbers could not get the safe open with the combination, so they untied Virginia and made her open the safe. They then retied Virginia to the chair. The robbers took jewelry, including Virginia's wedding ring; $45,000 in gold coins; loose diamonds and gems; and $700 in cash. They also took Travis's two hunting rifles, watches, and fountain pens. Before fleeing, the robbers warned Virginia that they would return and hurt her if she looked back at them. After

---

[4]The record revealed that Appellant is significantly shorter than Jose, Eddylberto, and Ryan.

3

about five minutes, Virginia loosened the restraints and ran to a neighbor for help, and the neighbor called the police.[5]

After leaving the Waterses' home, Ryan told Gardenia to come get them, which she did. Jose, Eddylberto, Ryan, and Appellant threw "full" bags and two rifles into the back of Gardenia's car. As they pulled away, Jose took off his gloves and threw them out of the car window. Gardenia drove the men to her home. Appellant's girlfriend picked up Ryan, Appellant, Eddylberto, and Jose and took them to a pawn shop. Appellant pawned eight gold and diamond rings, but in identifying himself, he used his middle name as his first name and provided his correct driver's license number and birthdate. Appellant was paid $285. Jose—using his correct full name, address, and driver's license number—sold a necklace and several diamond rings for $407. Appellant's girlfriend then dropped off the four men at a local mall.

Meanwhile, Fort Worth Police Detective Ernie Pate arrived at the scene of the robbery. A patrol officer discovered a pair of gloves abandoned in the street near the Waterses' home. After speaking with the Waterses, including John Waters, Pate suspected that Eddylberto had told the other men how to enter the home through the garage based on his relationship with John Waters. In investigating Eddylberto's known associates, including Appellant, Pate discovered an outstanding arrest warrant for Ryan. Pate distributed descriptions

---

[5]Virginia could not call the police from her house because the robbers had taken her cell phone and the phone receiver for her land line.

4

of the stolen items to local pawn shops and asked to be notified immediately when Ryan's warrant was executed.

On March 8, 2011, Ryan was stopped for a traffic violation and arrested based on the outstanding warrant. When the arresting officer stopped Ryan, he noticed that Ryan had new rims on his car. The arresting officer notified Pate, who interviewed Ryan and Ryan's two passengers—Eddylberto and Appellant—at the scene. Pate obtained all three men's driver's license numbers, and all three consented to DNA tests. Pate later checked Appellant's driver's license number against information provided by pawn shops about their sellers and discovered Appellant's pawn-shop sales the day of the robbery.[6]

Pate asked Detective Jerry Cedillo to go to Appellant's house where Appellant consented to a search of his bedroom. Cedillo asked Appellant if there were any weapons or drugs in the house. Appellant responded that there were two handguns, which were found in a laundry basket and in the pocket of Appellant's shirt hanging in his closet.[7] Appellant told Cedillo that he had some coins and cash hidden in the room. Cedillo discovered gold coins, loose diamonds, and $3,140 in Appellant's bedroom. Cedillo asked Appellant if the

---

[6]Because Appellant did not use his first name when pawning the rings, Pate's earlier searches of pawn-shop information did not reveal that Appellant had sold anything. Virginia later identified several of the items sold with Appellant's driver's license number as having been stolen during the robbery.

[7]Appellant's fingerprints were not found on either gun but he later told his girlfriend, who testified at trial, that he had possessed one of the guns "for a long time."

5

coins were from the Waterses' robbery, and Appellant nodded his head affirmatively. After Appellant's arrest, Appellant told his friend that he, Ryan, Jose, and an unnamed fourth person had robbed the Waterses' home, entered the home armed, and tied up an old woman. The Waterses' rifles were later discovered in a dumpster near Gardenia's home. Jose's DNA was found on one of the rifles and on the gloves found near the Waterses' home.

A grand jury indicted Appellant for the offenses of (1) aggravated robbery by threatening or placing Virginia, who was sixty-five or older, in fear of imminent bodily injury or death and (2) aggravated robbery by threatening or placing Virginia in fear of imminent bodily injury or death and exhibiting a deadly weapon. *See* Tex. Penal Code Ann. § 29.03(a)(2), (3)(A) (West 2011). At trial, the State introduced the pawn-shop ticket of Appellant's sale after the robbery, which the trial court admitted over Appellant's Confrontation-Clause objection. The State also elicited Pate's testimony regarding the records of the Department of Public Safety showing Appellant's driver's license number, which the trial court admitted over Appellant's relevance objection. A jury found Appellant guilty of aggravated robbery by threats of an elderly person and assessed his punishment at forty years' confinement.

## II. SUFFICIENCY OF THE EVIDENCE

In his first point, Appellant argues that the evidence was legally insufficient to support his conviction because "no physical evidence links the Appellant to the

home of Ms. Waters during the robbery. No prints, DNA, hair fibers, or witnesses that are credible can put the Appellant at the scene of the robbery."

## A. STANDARD OF REVIEW

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We may not assess the sufficiency of the evidence by focusing on what evidence the State did not introduce. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex. Crim. App. 1986).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex.

7

Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the fact-finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

## B. APPLICATION

Appellant is correct that no DNA or fingerprint evidence connects him to the robbery. But we may not focus on what evidence is missing. *See Chambers*, 711 S.W.2d at 245. We must focus on the admitted evidence and determine whether the inferences from that evidence are reasonable based upon the evidence's cumulative force when viewed in the light most favorable to the verdict. Therefore, the absence of DNA or fingerprint evidence does not, *ipso facto*, result in a conclusion that the evidence was insufficient to support the jury's verdict. Appellant next argues that no "witnesses that are credible can put Appellant at the scene of the robbery." This argument strays from the appropriate standard of review. We may not evaluate a witness's credibility as that is the sole province of the fact-finder. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Winfrey*, 393 S.W.3d at 768. Thus, in accordance with this review standard, we look to the cumulative force of the admitted evidence in the deferential light most favorable to the jury's verdict.

The evidence admitted at trial showed that Appellant agreed to rob the Waterses along with Eddylberto, Jose, Aurelio, and Ryan. Gardenia testified that she dropped off Appellant, Eddylberto, Jose, and Ryan off at the Waterses' home

8

and that the four returned with full bags and two rifles. That same day, Appellant and Jose used their driver's license numbers to pawn several items, which Virginia later identified as having been stolen from her home. Although the majority of the evidence implicating Appellant was introduced through Gardenia's testimony, we may not re-evaluate whether Gardenia was credible or not. We may only view her testimony in the light most favorable to the verdict. The cumulative force of this evidence shows that the jury's verdict was based on the reasonable inference that Appellant participated in the robbery. *See, e.g.*, *Woolridge v. State*, No. 04-12-00402-CR, 2014 WL 667500, at *5 (Tex. App.—San Antonio Feb. 19, 2014, no pet.) (mem. op., not designated for publication); *Landrum v. State*, No. 10-08-00359-CR, 2010 WL 3342003, at *2–3 (Tex. App.—Waco Aug. 25, 2010, pet. ref'd) (mem. op., not designated for publication); *Martinez v. State*, 313 S.W.3d 358, 363 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Thus, the evidence was sufficient, and we overrule Appellant's first point.

### III. ADMISSION OF EVIDENCE

In his final two points, Appellant argues the trial court erred by admitting the pawn-shop ticket of the sale and Appellant's driver's license information. We review a trial court's decision to admit evidence under an abuse-of-discretion standard. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). If the trial court's ruling falls within the zone of reasonable disagreement,

9

we will affirm it. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Relevant evidence is presumed admissible. *Montgomery*, 810 S.W.2d at 389.

### A. PAWN-SHOP TICKET

In his second point, Appellant contends that the trial court erred by admitting the pawn ticket, which showed what Appellant had pawned on February 15, 2011, because it violated his right to confront and cross-examine the pawn-shop employee who had bought the rings from Appellant and had filled out the ticket—Zach Pope.

At trial, Virginia identified several pieces of jewelry in photographs as pieces that had been taken from her home on February 15, 2011. The State then offered the pawn-shop ticket into evidence as a business record. *See* Tex. R. Evid. 803(6). In response to Appellant's Confrontation-Clause objection, the State argued that Pope was "in fact, one of the witnesses that's on deck to testify today." The trial court stated that the ticket was a business record not subject to cross-examination, overruled Appellant's objection, and admitted the pawn-shop ticket during Virginia's testimony.

Pope testified later that same day and confirmed that he was the clerk who had filled out the ticket for Appellant's sale on February 15, 2011. Appellant chose not to cross-examine Pope in open court. In an offer of proof, however, Appellant renewed his Confrontation-Clause objection based on Pope's testimony that he had no independent recollection of the sale and that he did not

10

enter the information on the ticket into the police database. The trial court again overruled the objection. The owner of the pawn shop later testified that he was present during Appellant's sale and remembered several details of the purchase. He also testified that the ticket was a regularly-kept business record. Neither Pope nor the owner could positively identify Appellant.

The Confrontation Clause is not offended if the declarant of a testimonial statement is available and later testifies at trial. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004); *Zuniga v. State*, No. 08-08-00314-CR, 2011 WL 1157555, at *5 (Tex. App.—El Paso Mar. 30, 2011, no pet.) (mem. op., not designation for publication); *Marzek v. State*, No. 06-10-00087-CR, 2011 WL 238347, at *2 (Tex. App.—Texarkana Jan. 25, 2011, no pet.) (mem. op., not designated for publication); *Thompson v. State*, No. 2-04-496-CR, 2005 WL 3343872, at *3 (Tex. App.—Fort Worth Dec. 8, 2005, no pet.) (mem. op., not designated for publication). Pope and the owner of the pawn shop, who were both present at the time of Appellant's sale, testified about the ticket and were subject to cross-examination. The Confrontation Clause was not violated, and we overrule Appellant's second point.

### B. APPELLANT'S DRIVER'S LICENSE INFORMATION

In his final point, Appellant argues the trial court erred by allowing Pate to testify that Appellant's driver's license number matched the number on the pawn-shop ticket because it was not relevant. During Pate's testimony, and in an effort to establish that Appellant's driver's license number was the same number that

was used to pawn the rings identified by Virginia as hers, the State offered into evidence a redacted copy of Appellant's driving record.[8]  Appellant objected because "there's not been a witness that's testified to [link Appellant to the pawning of the jewelry], so it's not relevant."  The trial court overruled Appellant's objection and admitted Appellant's drivers' license picture and number into evidence.

To the extent Appellant's argument is based on his contention that the driver's license information was not relevant because of the inadmissibility of the pawn-shop ticket, we have concluded that admission of the pawn-shop ticket did not violate the Confrontation Clause.  Further, the driver's license information was relevant and admissible.  *See* Tex. R. Evid. 401, 402.  The information in Appellant's driver's license record confirmed that Appellant's driver's license number was used to pawn several of Virginia's rings on the day of the robbery.  Further, it showed Appellant's height, which indicated he was the person who had held a gun to Virginia based on her testimony that a shorter man guarded her.  The evidence supported a fact of consequence—that Appellant participated in the robbery of the Waterses—and was admissible.  *See* Tex. R. Evid. 401; *see also Waldrop v. State*, 133 S.W.2d 969, 970 (Tex. Crim. App. 1939) ("[I]t is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less probable."); *Condarco v. State*, No. 03-12-00572-CR,

---

[8]The State redacted all "extraneous" information—"a laundry list of extraneous" offenses included in Appellant's driving record.

12

2013 WL 4822939, at *4 (Tex. App.—Austin Aug. 27, 2013, no pet.) (mem. op., not designated for publication) (holding statutory-warning form admissible because it contained identifying information of defendant, which was relevant for purposes other than to bolster police officer's testimony). The trial court did not abuse its discretion by admitting the evidence, and we overrule point three.

## IV.  CONCLUSION

Having overruled Appellant's points, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 14, 2014

13