ACCEPTED
06-15-00081-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
9/10/2015 7:28:17 PM
DEBBIE AUTREY
CLERK

# IN THE COURT OF APPEALS FOR THE
# SIXTH DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
9/11/2015 9:18:00 AM
DEBBIE AUTREY
Clerk

**BOBBY JOE EVENS,**
APPELLANT

§
§
§
§

v.

§

**Nos. 06-15-00081-CR**

§
§
§

**THE STATE OF TEXAS,**
APPELLEE

§
§

---

## STATE'S BRIEF

---

FROM THE 196ᵀᴴ JUDICIAL DISTRICT COURT
HUNT COUNTY, TEXAS

TRIAL CAUSE NUMBER 27,364
THE HONORABLE J. ANDREW BENCH, JUDGE PRESIDING

**NOBLE DAN WALKER, JR.**
District Attorney
Hunt County, Texas

**KELI M. AIKEN**
First Assistant District Attorney
P. O. Box 441
4ᵗʰ Floor Hunt County Courthouse
Greenville, TX 75403
kaiken@huntcounty.net
(903) 408-4180
FAX (903) 408-4296
State Bar No. 24043442

*THE STATE REQUESTS THE*
*OPPORTUNITY TO PRESENT ORAL*
*ARGUMENT ONLY IF APPELLANT'S*
*REQUEST IS GRANTED*

# TABLE OF CONTENTS

Table of Contents .................................................................................................. ii

Index of Authorities .............................................................................................. iii

Statement of the Case ............................................................................................ 5

Issues Presented ................................................................................................ 6–21

    1. The evidence was legally sufficient in that it proved every element of the
       offense beyond a reasonable doubt. ........................................................ 6–15

    2. Appellant received an appropriate sentence based upon the evidence heard
       at trial by the jury for a habitual offender facing 25 years to life.
       Furthermore, the trial court imposed consecutive sentences after hearing
       both trials and Appellant's numerous admissions to selling drugs in Hunt
       County for over two decades. ................................................................ 15–21

Prayer .................................................................................................................. 21

Certificate of Service .......................................................................................... 22

Certificate of Compliance with Rule 9.4 ............................................................ 22

# INDEX OF AUTHORITIES

**STATE CASES:**

*Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996) ................................6

*Chambers v. State*, 711 S.W.2d 240, 245–47 (Tex. Crim. App. 1986) .....................7

*Dewberry v. State*, 4 S.W.3d 735 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000) ................................................................................................................. 6

*Hines v. State,* 978 S.W.2d 169 (Tex. App.—Texarkana, no pet.) ...........................6

*Fernandez v. State*, 805 S.W.2d 451 (Tex. Crim. App. 1991) ................................ 7

*Jackson v. Virginia,* 433 U.S. 307, 99 S.Ct. 2781 (1979) ...................................... 11

*Johnson v. State*, 23 W.W.3d 1(Tex. Crim. App. 2001) ......................................... 6

*Poindexter v. State*, 153 S.W.3d 402 (Tex. Crim. App. 2005) ................................ 7

*Threadgill v. State,* 146 S.W.3d 654, 663 (Tex. Crim. App. 2004) ......................... 6

*Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006) ..................................... 6–7

**STATE STATUTES:**

TEX. CON. SUB. ACT § 481.112(a) (Vernon 2015) ..................................................... 7

TEX. PEN. C. § 1.07(a)(39) (Vernon 2015) ................................................................. 7

TEX. PEN. C. § 6.01(b) (Vernon 2015) ....................................................................... 7

TEX. PEN. C. § 12.42(d) (Vernon 2015) ..................................................................... 15

## IN THE COURT OF APPEALS FOR THE
## SIXTH DISTRICT OF TEXAS AT TEXARKANA

| | | |
|---|---|---|
| **BOBBY JOE EVENS,** | § | |
| APPELLANT | § | |
| | § | |
| v. | § | **Nos. 06-15-00081-CR** |
| | § | |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| APPELLEE | § | |

---

### STATE'S BRIEF

---

TO THE HONORABLE COURT OF APPEALS:

NOW COMES the State of Texas, Appellee, in this appeal from Cause No. 27,64 in the 196th Judicial District Court in and for Hunt County, Texas, Honorable J. Andrew Bench, Presiding, now before the Sixth District Court of Appeals, and respectfully submits this its brief to the Court in support of the judgment of sentence in the court below.

## SUMMARY OF THE STATE'S ARGUMENT

In this case there was overwhelming evidence of Appellant's guilt. The jury heard proof of each required element in addition to numerous admissions made by Appellant and his conviction for federal charges that included the manufacture / delivery of drugs on May, 26, 2010 in Hunt County, Texas with Misty Lynett Brigham (hereinafter "Brigham").

At punishment, Appellant's priors were admitted to show proof of at least two felonies in sequence. The jury not only saw the pen packets, and judgments, but they heard Appellant's admissions to the priors to enhance him to habitual offender status.

In this case, the State presented evidence showing Appellant's career as a drug dealer in Hunt County spanning thirty years. Appellant continued his drug sales when he was on probation, when he was on parole and even when he was incarcerated at the Hunt County jail. The evidence showed Appellant sold over five kilos of cocaine in Hunt County within just a seventeen month time frame in 2010-2011. Appellant's criminal drug conspiracy led to the arrest and conviction of over 28 other defendants including several of his family members and he was the head of the organization. The jury heard sufficient evidence to compel them to impose a seventy-five year prison sentence and the trial court heard enough evidence to justify making this a cumulative sentence.

## STATE'S RESPONSE TO POINTS OF ERROR ONE

**The evidence was legally sufficient to prove Appellant guilty of Manufacture / Delivery of Cocaine as alleged in the indictment.**

### Argument and Authorities

The proper standard of review to determine legal sufficiency is whether the evidence would support the verdict when viewed in the light most favorable to the verdict. *Johnson v. State*, 23 W.W.3d 1, 7 (Tex. Crim. App. 2001). In other words, if a reasonable trier of fact could have found beyond a reasonable doubt the essential elements of the crime, the verdict will be deemed legally sufficient. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996); *Hines v. State*, 978 S.W.2d 169, 172 (Tex. App.—Texarkana, no pet.).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts. *Jackson v. Virginia*, 433 U.S. 307, 319, 99 S.Ct. 2781 (1979); *Threadgill v. State*, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004). When performing a legal sufficiency review, the court may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and substituting its judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).

The court must consider all of the evidence submitted before the jury,

6

including inadmissible evidence. *Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006). Specifically, the Court held that "once the trier of fact has weighted the probative value of unobjected-to hearsay evidence in its fact finding process, an appellate court cannot deny that evidence probative value or ignore it in a review of the sufficiency of the evidence. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (citing *Fernandez v. State*, 805 S.W.2d 451, 453–56 (Tex. Crim. App. 1991) and *Chambers v. State*, 711 S.W.2d 240, 245–47 (Tex. Crim. App. 1986).

## A. The State proved every required element for the offense of possession with intent to deliver beyond a reasonable doubt.

A person commits the offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in penalty group one. TEX. CON. SUB. ACT § 481.112(a) (Vernon 2015). Possession means "actual care, custody, control or management." TEX. PEN. C. § 1.07(a)(39) (Vernon 2015). Possession is voluntary if the possessor knowingly obtains or receives the thing possessed or is aware of his or her control of the thing for a time sufficient to terminate his or her control. TEX. PEN. C. § 6.01(b) (Vernon 2015).

The indictment required proof of the following elements: 1) On or about the 26th day of May, 2010 in Hunt County, Texas; 2) Bobby Joe Evens aka Bobby Joe Grant; and 3) acting together with Misty Lynett Brigham; 4) knowingly or intentionally possessed with intent to manufacture or deliver a controlled

7

substance, cocaine, in an amount of more than four grams but less than two hundred grams. CR6–7.

## B. Appellant admitted his guilt to this crime as part of his prior testimony in a federal case.

There is no reason to doubt the reliability or believability of Appellant's prior testimony that admitted to the elements of this crime. The certified transcript was published to the jury. SE22. Furthermore, the transcript tends to connect Appellant to this offense in that on May 21, 2013 in a co-conspirators federal trial, Appellant testified that Brigham was his girlfriend and that:

Q: Now, in regards to Misty Brigham, back in May of 2010, were you aware that she was stopped with over 200 grams of crack cocaine?

A: Yes, sir.

Q: And whose crack cocaine was that that she was carrying on May 26, 2010?

A: It was mine.

Q: Okay. And where was she going with that crack cocaine, if you know?

A: She was supposed to have been taking it to my nephew.

Q: Your nephew, being who?

A: Chase Grant.

Q: And why was she taking it over to Chase Grant?

A: Just to hold it until I get there to cut it up.

Q: And where were you leaving from that day?

A: I was – we were leaving from a motel.

SE29. An additional excerpt from the same testimony was admitted as State's Exhibit 29B. Appellant stated that he continued distributing crack cocaine while incarcerated in the Hunt County jail though Brigham. *Id.* Appellant also admitted he used jail calls to direct Brigham and give her instructions on how to distribute cocaine. *Id.* Appellant explained how Brigham knew how to distribute cocaine because she had been with him before he was incarcerated. *Id.* Appellant also made it clear that Brigham knew his customers, supplier, and drop off locations as well as what amounts of drugs to distribute based on Appellant's directions and being with him when he conducted business. SE 29B. A reasonable inference from this testimony shows that Appellant admitted to every element of this offense in his prior federal testimony.

### C. The jury heard undisputed evidence that this offense occurred on May 26, 2010 in Hunt County, Texas and involved both Appellant and his co-actor Misty Brigham.

Misty Brigham told the jury that the offense took place on May 26, 2010 RR5/91–92. The jury also saw photos of Appellant and Brigham showing them loading their vehicles that day before the traffic stop. SE7–10. The jury also saw photos of Appellant and Brigham as they encountered officers on May 26, 2010. SE11–16. Inv. Mitchell also showed the jury photos of the drugs recovered.

9

SE17–27.

Inv. Mitchell saw Appellant and Brigham at the Best Western motel moving items from a motel room to two vehicles- his truck and Brigham's car. RR5/42–44. Appellant was following Brigham as they left the motel. RR2/p.45, lines 3–9. When Officer Stillwagoner pulled Appellant over for a traffic violation Brigham pulled over as well. RR5/p.47, lines 16–24.

Officer Russell Stillwagoner identified Appellant and told them how Brigham was following Appellant on May 26, 2010 just prior to the traffic stop. RR5/26–29. When Stillwagoner pulled Appellant over, Brigham pulled in behind him and parked like she was waiting on Appellant. RR5/p.29, lines 11–14. He stopped Appellant less than a mile from the motel. RR5/p.29, lines 15–19. Officer Robert Pemberton used canine Seko to conduct a sniff of Appellant's truck and Seko hit on both door handles of the vehicle. RR5/30–31. While officers did not find drugs in Appellant's truck, Brigham did have marijuana in her possession and handed it over to Inv. Jason Smith at the scene and was arrested. RR5/32–33; 48–49; 78–79. When Brigham was arrested, Appellant "aggressively" requested that her vehicle be left in his possession and Brigham agreed. RR5/50–51.

### D. Evidence proved beyond a reasonable doubt that Appellant and his co-actor Ms. Brigham possessed over four grams but less than two hundred grams of cocaine with intent to deliver.

On the way to the jail Brigham was asked if she had any other drugs in her

possession and warned that taking a controlled substance into the jail would result in an additional charge. RR5/51–52. Brigham told Inv. Mitchell she did not have any other drugs on her but at the jail she immediately said she needed to use the restroom. RR5/52–53. Inv. Felicia White came to search Brigham prior to letting her go to the restroom and Brigham handed over a half pound of cocaine. RR5/53–54; 86–89.

Inv. Mitchell explained how 187 grams of cocaine could be broken down and distributed into smaller amounts. RR5/56–57.

Brigham lived at the hotel and Appellant stayed with her off and on. RR5/90–91. They were in a relationship from January 2010 on. RR5/103–104. In May, 2010 Appellant was helping Brigham move into his house on Pepperport. RR5/p.92–93. Brigham was following Appellant on May 26, 2010 when she saw the traffic stop and pulled over. RR5/93–94. Brigham was arrested at the scene for possession of marijuana. RR5/94–96. On the way to the jail, Ms. Brigham rode with the investigators who told her that if she had any more contraband she needed to tell them before she took it into the jail and faced an additional charge. RR5/96–97. When they got to the police department Brigham gave Inv. White the cocaine she had on her. RR5/97–98. Appellant had initially placed the cocaine in Brigham's purse but when she knew she was going to be arrested she took the cocaine and hid it on her body. *Id.* Brigham thought she could hide the drugs

11

from the officers and not have to give them up so she could give them back to Appellant. RR5/98, lines 6–8, p.107, lines 13–15. Brigham told the jury that the cocaine she had that day belonged to Appellant. RR5/p.98, lines 9–17; pp.116–117.

Brigham told the jury she was currently incarcerated for a federal drug cocaine conspiracy case and had worked out a deal in her federal case to testify against any co-actors, including Appellant. RR5/114–115. Brigham did not have a deal regarding any state charges. RR5/114, lines 15–23. Brigham's federal conviction as based on her selling crack cocaine for Appellant. RR5/p.114–116. Brigham started selling drugs for Appellant when he got arrested and asked her to "take over where he left off." RR5/116, lines 14–18. Prior to Appellant's arrest, Brigham was with Appellant when he sold cocaine or cut it up. RR5/116, lines 19–22.

On May 26, 2010 that was the first time Appellant had her carry the drugs for him. RR5/117, lines 3–7. Prior to that, she had been with Appellant when he drove to get drugs from his supplier in Dallas. RR5/117–118. Appellant had several people who sold drugs for him. RR5/118, lines 15–23. She sold drugs for Appellant from the time he was arrested until she was taken into custody – around six months. RR5/118–119; p.123, lines 17–22. When Appellant was in jail, he would send her to Dallas to pick up his supply of cocaine, usually in one hundred

12

gram amounts. RR5/119–120. Appellant would then instruct her on how to break the drugs into certain amounts and who to take them too. RR5/120–121. Brigham used the proceeds from drug sales to pay the bills while Appellant was in jail, to buy more drugs, and to distribute money to other people at his direction. RR5/122–123. She finally stopped selling for him in July 2011 when she was caught with 100 grams of Appellant's cocaine. RR5/125–127. Brigham has only sold drugs for Appellant. *Id.*

Ms. Kiana Henderson, forensic chemist for the Drug Enforcement Administration crime lab, testified that she tested the drugs recovered in this case and they contained a net weight of 187.3grams of cocaine base. SE2 & 3.

Appellant admitted that Brigham had 14grams of crack cocaine that was his on May 26, 2010 but claims she had taken it to Campbell to his nephew Chase Grant earlier in the morning. RR5/134–135. Appellant admitted he helped Brigham move items from her hotel room that morning. RR5/135–136. Appellant was there on May 26, 2010 when Brigham was arrested. RR5/137, lines 13–16. Appellant also admitted he took possession of Brigham's car when she was arrested. RR5/137–138. Appellant said his federal testimony (in SE 29) was that the drugs Brigham had that day were his- meaning the cocaine he had given to Brigham earlier that morning to deliver to his nephew. RR5/139k lines 1–24. Appellant claimed that the cocaine Brigham was caught with was another separate

13

batch of cocaine and not his drugs that he had given her earlier that morning. RR5/140–141; 187–188.

Appellant admitted to his prior convictions. Appellant admitted he was convicted of the federal crime of Conspiracy to Possess with Intent to Distribute Cocaine Base – the same conspiracy where Brigham and 17 other co-actors were convicted. State's Exhibit 54. He was convicted of:

1.) Evading arrest with a vehicle enhanced to a second degree in 2008;

2.) Possession of Cocaine – a second degree felony in 1991;

3.) Possession with intent to deliver – a first degree felony in 1989;

4.) Receiving Stolen Property over $750.00;

5.) Escape in 1978;

SE 50, 52, 53.

State's exhibit 30- jail calls

Appellant admitted that he was talking with Brigham in the jail calls admitted as State's Exhibit 30. RR5/150, lines 1–5. Appellant admitted that Brigham was selling drugs for him while he was in jail. RR5/150, lines 8–21. Appellant was instructing her to get 63 grams of crack cocaine from his supplier and sell it. RR5/150–152. He told her to cook the cocaine and get it to at least 112 grams. Id. The jury also heard Appellant's jail calls to Brigham where he explained how to cut the drugs into smaller amounts for sale and where to deliver

14

the drugs. SE30. In these calls, the jury also heard Appellant tell Brigham what to do with his income from selling cocaine. *Id.*

At first Appellant tried to claim that Brigham only sold drugs for him for a month in April 2011, but then he changed his story and eventually had to admit she was very involved in his drug business during their relationship. RR5/160–180.

Appellant admitted the largest amount of drugs he bought was 500 grams of crack cocaine. RR5/170–171. He bought the drugs to sell them. RR5/172, lines 1–4. Appellant admitted that he broke the drugs down into sellable units of 3.5 grams, 7 grams, 14 grams, 21 grams and 28 grams. RR5/173, lines 5–9. Appellant also admitted he sold drugs but claimed he did not use them. RR5/173, lines 15–21.

The evidence in this case is legally sufficient to prove Appellant guilty of the offense as charged; therefore, his conviction should be affirmed.

### STATE'S RESPONSE TO POINTS OF ERROR TWO

**Appellant received an appropriate sentence based upon the evidence heard at trial by the jury for a habitual offender facing 25 years to life. Furthermore, the trial court imposed consecutive sentences after hearing both trials and Appellant's numerous admissions to selling drugs in Hunt County for over two decades.**

### Argument and Authorities

If a defendant is on trial for a third degree felony or higher, and the State proves that he has been finally convicted of two prior felonies in sequence, the punishment range increases to twenty-five years to life. TEX. PEN. C. § 12.42(d) (Vernon 2015). First, Appellant admitted to each of these priors in his testimony. RR5/142–148.

**A.) Each of Appellant's prior felonies were proven beyond a reasonable doubt and the pen packets as well as judgments offered to show how they were in sequence.**

The State proved the allegations in each of the enhancement paragraphs through the admission of pen packs and judgements as well as Appellant's admissions. RR5/142–148. SE50, 52–53. Enhancement paragraph one alleged that on or about February 22, 1989 in in 354th Judicial District Court of Hunt County, Texas in Cause 15,199 Appellant was finally convicted of Possession of a Controlled Substance with Intent to Deliver. SE50. The pen pack showed that Appellant received ten years for this first degree felony offense. *Id.*

Enhancement paragraph two alleged that on or about the 6th day of January, 1987 in 196th Judicial District Court of Hunt County, Texas in Cause 13,493 Appellant was finally convicted of Theft by Receiving and Concealing Stolen Property over $750.00. SE50. Appellant first received probation in September of 1983 for this third degree felony but was later revoked and sentenced to seven years

16

in prison. *Id.*

Enhancement paragraph three alleged that on or about the 1st day of April, 1993, in the 354th Judicial District Court of Hunt County, Texas in Cause 15,663 Appellant was convicted of Possession of Controlled Substance, Namely: Cocaine. SE52. Appellant was initially convicted on December 16, 1991 and placed on probation but that probation was later revoked and he received a twenty year prison sentence for this second degree felony. *Id.*

Enhancement paragraph four alleges that on or about the 30th day of June, 1980 in the 196th Judicial District Court of Hunt County, Texas in Cause 11,805 Appellant was convicted of Escape. SE53. In 1978, Appellant initially received probation for this third degree felony but was later revoked and sentenced to two years in prison. *Id.*

**B.) The jury heard ample additional punishment evidence to sentence Appellant to seventy-five years for a habitual offense and the trial court heard ample evidence to justify a cumulative sentence.**

Inv. Mitchell worked on the drug conspiracy case from May 26, 2010 through the trial. RR6/p.8, lines 12–14. The conspiracy involved fifty-one individuals. RR6/p.8, lines 17–20. The jury saw a powerpoint prepared by Inv. Mitchell explaining the makeup of the drug conspiracy Appellant was involved in. SE57; RR6/8–18. Appellant was the top person involved in the conspiracy in Hunt County, with other co-actors who worked for him. RR6/p.10, lines 1–17. Inv.

17

Mitchell went on to explain to the jury the role of each co-conspirator and how they worked for Appellant. RR6/10–18. Inv. Mitchell also explained how Appellant continued his drug sales from the Hunt County jail through jail calls to his co-conspirators. RR6/15–16. Appellant made over 700 calls in a four month period and about thirty-five of those calls were offered into evidence. RR6/16, lines 8–22; SE56.

Inv. Mitchell told the jury that since 1980's when he started as an officer, a "a large percentage, any and everything from petty theft up into and including murder" of the crimes he works are drug-related. RR6/p.22, lines 15–19. Inv. Mitchell also confirmed that use of cocaine can make someone more violent than they might be otherwise. RR6/pp.22–23.

Inv. Mitchell verified that Appellant correctly explained the process for converting powder cocaine to crack cocaine in his federal testimony. SE49; RR6/p.23, lines 4–12. He also verified that the quantities Appellant described in his federal testimony were similar to the amounts of cocaine sold in Hunt County. RR6/p.23, lines 13–24. Inv. Mitchell also verified that Appellant's testimony about using nicknames to denote a specific quantity of drugs, such as a "vick" were accurate. RR6/23–24.

Inv. Mitchell reminded the jury that Appellant admitted to selling at least four (to five) kilos of cocaine in a seventeen month period from 2010 through 2011.

SE49; RR6/p.29, lines 1–22. Inv. Mitchell told the jury that from a five kilo stash of cocaine, approximately 150,000 people could get at least one high. RR6/30–31. One hundred fifty thousand is more than the entire population of Hunt County, Texas. RR6/p.31, lines 15–18. Inv. Mitchell told the jury that Appellant made drug deals in the street, at car washes, convenience stores, grocery stores, parking lots – in a lot of public areas where innocent civilians were around. RR6/p.35, lines 3–18. The jury also saw multiple photos showing where Appellant did business, and the vehicles he used for drug sales. SE 33–38.

### C.) Appellant's own admissions established a 30 year career selling drugs from marijuana to powder cocaine, to crack cocaine exclusively to the citizens of Hunt County.

In addition to the admissions regarding Brigham and his drug business, the remainder of Appellant's testimony from federal court was offered at punishment showing the jury how long he worked as a drug dealer in Hunt County. The additional information the jury heard from the transcript was:

1.) Appellant's most recent employment included roofing and selling drugs in Hunt County, Texas;

2.) at the time of the prior testimony, Appellant was incarcerated in federal prison for Conspiracy to Possess with Intent to Distribute Cocaine Base;

3.) his prior criminal history included multiple prison trips for burglary, larceny, drug trafficking and escape;

4.) he was distributing drugs in Hunt County, Greenville, Texas and became involved in the sale of illegal drugs in the early to late 80's;

19

5.) Appellant started out selling marijuana in small quantities but increased the amount over time and he started selling powder and crack cocaine in 1987 in increasing amounts

6.) He explained how to convert powder cocaine to crack cocaine and how 3.5 grams was a typical sell but he also sold in 7 gram amounts and called the 7 gram sell a "Vick" and 28 grams or an ounce called a "cookie jar";

7.) Appellant told the jury that he came up with different codes or nicknames for the amounts of drugs sold;

8.) Appellant took Brigham with him to pick up drugs from his supplier in Dallas;

9.) Appellant explained how he would buy large amounts of drugs from his supplier and then he would bring it back to Greenville and cut the drugs down into smaller amounts to package and sell;

10.) he delivered crack cocaine to customers in Greenville at convenience stores in town;

11.) he was stopped after meeting with Robert Lewis Smith (whom he calls Emory) at a convenience store and had over $1,000.00 seized from him;

12.) Appellant specifically talked about his drug sales from February 2010 through September 2011;

13.) he identified his house on Pepperport street and identified his truck that he used to deliver drugs on several occasions;

14.) Appellant also testified to how several other co-conspirators from the federal case were tied to his drug business as either suppliers or people who bought drugs from him;

15.) From February 2010 through September 2011 Appellant sold at least four (to five) kilos of cocaine;

SE49. Appellant implicates himself as a drug dealer who sold cocaine to

Smith in up to 7 gram amounts during the timeframe to include November 9, 2010 at various convenience stores in Greenville, Hunt County, Texas while driving his truck. Id.

The jury heard sufficient evidence to justify the seventy-five year sentence imposed on Appellant as a habitual offender and the trial court had ample evidence presented to justify consecutive sentencing in this case; therefore, Appellant's points of error should be denied and his conviction and sentence affirmed.

## CONCLUSION AND PRAYER FOR RELIEF

The State prays that the Court will affirm Appellant's sentence.

Respectfully submitted,

**NOBLE DAN WALKER, JR.**
District Attorney
Hunt County, Texas

  **/s/ Keli M. Aiken**
**KELI M. AIKEN**
Assistant District Attorney
P. O. Box 441
4th Floor, Hunt County Courthouse
Greenville, TX 75403
kaiken@huntcounty.net
State Bar No. 240434482
(903) 408-4180
FAX (903) 408-4296

# CERTIFICATE OF COMPLIANCE OF TYPEFACE AND WORD COUNT

In accordance with Texas Rules of Appellate Procedure 9.4 (e) and (i), the undersigned attorney or record certifies that Appellants Brief contains 14-point typeface of the body of the brief and contains 3.943 words and was prepared on Microsoft Word 2013.

**/s/ Keli M. Aiken**
KELI M. AIKEN
First Assistant District Attorney
P. O. Box 441
4th Floor Hunt County Courthouse
Greenville, TX 75403
(903) 408-4180
FAX (903) 408-4296
State Bar No. 24043442

## CERTIFICATE OF SERVICE

A true copy of the State's brief has been placed in Elisha Hollis' box in the Hunt County District Clerk's Office, today September 10, 2015, pursuant to local rules.

**/s/ Keli M. Aiken**
KELI M. AIKEN
First Assistant District Attorney